FILED BY SAS
Deputy Clerk
Apr 29, 2015
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Miami

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE COUNTY DIVISION**

**Janet Hill** )
**Plaintiff** ) **Case No:**______________________
v. ) 15-CV-21621-Scola/Otazo-Reyes
**Bank of New York Mellon, f/k/a** )
**Bank of New York, As Trustee, et al** )
**and Bayview Loan Services** )
**Defendants** )
______________________________)

**Complaint for: Declaratory Judgment, Petition to Restrain Wrongful Foreclosure Attempts; Breach of Contract and Civil Land Tort Violations**

## INTRODUCTION

**1.**

Comes now, Janet Hill, Plaintiff in the above action, seeking equitable relief and judgment as a matter of law by this honorable Court due to manifest errors made by named Defendants in breach of contract, attempted wrongful foreclosure, and land torts conspiracy. Whereas, on or about September 15, 2014, the underlying mortgage contract is believed to have been **declared void** by a Florida state judicial ruling affecting similar loans originated by the purported lender America's Wholesale Lender (hereinafter referred to as "AWL").

The Plaintiff seeks the above stated relief and protections under applicable laws which includes, but not limited to, the Fair Debt Collection Practices Act (FDCPA), Breach of Contract, Deceptive Trade Practices Under Georgia Fair Business Act (GFBA), enforcement of Georgia's foreclosure statutes under OCGA §23-2-114, Breach of Legal Duties, unjust enrichment, conversion and trover and civil trespassing under Georgia's Civil tort laws OCGA §51-9-1. Any one of the

above mentioned statutes should have prohibited the actions by Bank Of New York Mellon[1] (BONY) as Trustee for the certificateholders of CWALT, Inc. Alternative Loan Trust 2005-58, Mortgage Pass through Certificates, Series 2005-58 (herein after referred to as, "The Loan Trust 2005-58", Bayview Loan Services,

---

[1] The crux of the matters before this Honorable Court are that The Bank of New York Mellon fka The Bank of New York , as Trustee for the certificateholders of CWALT, Inc. Alternative Loan Trust 2005-58, Mortgage Pass through Certificates , Series 2005-58 ( herein after referred to as " The Loan Trust 2005-58" has no standing to meddle with Ms. Hill's real property . It is Ms. Hill's belief that the Loan Trust 2005-58 entity is not licensed nor organization in any state to conduct business under Georgia's trust laws pursuant to OCGA §53-12-2 (15) . Bank of New York Mellon, as Trustee, hereinafter, is referred to as BONY, and it is not licensed in Georgia to carry on any trust activities. **Comments**: Upon belief the Loan Trust 2005-58 is unlicensed in Georgia which is in contravention for the trust or its trustee's to have any legal actions in accordance with the controlling Georgia law under OCGA §53-12-2 (15). Georgia's trust statute provides the following; (15) *"Trust property" means property the legal title to which is held by the trustee. The term also includes choses in action, claims, and contract rights, including a contractual right to receive death benefits as the designated beneficiary under a policy of insurance, contract, employees' trust, or other arrangement*." **Comments**: Wherefore, under such terms, if the mortgage of the trust was conveyed to it by AWL, then any conveyance should be subject to adverse legal title claims if the mortgage contract is found to have originated without lending preconditions or if found that the instrument was void, ab initio. Whereas, at that time BONY purportedly received the mortgage from AWL, it was an unlicensed and unregistered entity in 2005. Ms. Hill discovered these facts after she was engaged in questionable loan servicing torts and failures to modify her loan. In the whole part of 2005, AWL was not licensed to lend to the public consumers or to engage under federal or state laws without the proper lending preconditions. In the recent court rulings found by a Florida Judge, the order points to where the purported Lender AWL was not a registered lender and licensed New York corporation with a certificate of authority by NY's the Secretary of State at any time after 2005 and years beyond. If true, then Ms. Hill has the right to raise where her loan was invalid *ab initio*. Ms. Hill had been induced to bargain for a mortgage loan by not knowing that the purported Lender was unlicensed in the same years which were investigated by the Florida court. **See Exhibit 300.** Wherefore, the preceding questions of veracity of AWL's loan transacted with Ms. Hill is of quintessential importance. The transaction was illegal with respect to lending requirements that the Lender is duly licensed and registered. Ms. Hill's contract was therefore breached *ab initio,* by the fact the AWL was unlicensed. Thereafter, AWL had to legal right to pass title to the Loan Trust 2005-58. Thereafter, Bayview's and BONY's engaged in gross negligence and wanton conduct in which the Defendants, jointly and severally, had no rights and standing to attempt to enforce the questionable instruments after knowledge was presented of Florida Judicial ruling declaration of voidness. The Defendants wantonly meddled and attempted to foreclose under the dubious mortgage instruments. See *Holmes v. Clear Channel Outdoor*, 284 Ga.App. 474, 477(2), 644 S.E.2d 311 (2007)(exculpatory clauses are valid and binding and not void as against public policy, although they will not relieve a party from liability for acts of gross negligence or willful or wanton conduct

(hereinafter referred to as "Bayview") and their agent Georgia's Licensed law firm Brock & Scott from meddling with Ms. Hill's property. Plaintiff sets forth to show where the three entities engaged to deny the Plaintiff her full property rights after she presented, in good faith, her knowledge that her mortgage was impaired and that the veracity of the matter should be settled non-judicially. Among other things, the U.S. Constitution and Georgia's Constitution under the Bill of Rights, makes it a paramount duty for the government officials to protect her property rights. Accordingly, Ms. Hill seeks relief, herein.

## JURISDICTION

**2.**

This cause of action is brought under 28 U.S.C. §1332 for Diversity Citizenship and under Section 1331 for Federal questions under United States laws raised herein under the original jurisdiction for FDCPA 15 USC §§§§1692 (a),(f) (6), (g), (h), respectively, and under RESPA 12 USC §2601 et seq., accordingly.

This court has supplemental jurisdiction over pendant state claims under 28 U.S.C. §1367 involving federal trade statutes under Title 15 and Real Estate Settlement Procedures Act. Insomuch, the tort actions arises out of the same set of transactions in which Defendants used agents to act in contravention to the contract and consumer laws.

This Court has jurisdiction to decide on State laws by the Rule of Decision Act pursuant to 28 USC §1652.[2]

[2] Under 28 USC §1652 entitled "**State Laws As Rules Of Decision**" or is often referred to as Rules of Decision Act which provides, "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply. In *Cappuccitti v. Direct TV, Inc,, 623 F.3d 1118, 11th Cir. 2010*, the Court of Appeals had to determine under the applicable state law if binding arbitration clauses found in a consumer contract were enforceable. The *Cappuccitti Court* reversed a previous ruling and remanded because Georgia Law permits enforcement of Binding Arbitration Clauses.

This Court has jurisdiction to decide on an Interstate Consumer Contract by Federal Controlling laws[3] and the right to enforce the contract covenant terms under OCGA §13-8-54 et seq.[4], interstate trade practices and applicable state laws on foreclosure procedures.

Original jurisdiction exists under applicable 28 USC §2201 for Declaratory Relief exits because there are genuine controversies on torts of wrongdoings involving a wrongful foreclosure, and civil rights violations committed by "officers of the Courts". Whereas, at all times, Bayview (a Florida company) and BONY knew or should have known that they had exceeded their authorities due to the issues of voidness and

---

Also see the Supreme Court's rulings held in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). **Comments:** Herein, Plaintiff urges the court to review the several states legal conclusion as binding upon the federal court for determining the Security Deed's contract rights raised herein. Whereas, Georgia finds applicable and aligns its common law on the mortgage with several other state laws by determinations made, accordingly.

[3] The applicable right to review said contracts are found by the Supreme Court and cited in *Keene Corp. v. Ins. Co. of North America, 667 F. 2d 1034* - Court of Appeals, Dist. of Columbia Circuit 1981, citing "In interpreting a **contract**, a term's ordinary definition should be given weight,...." Also see, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 US 20 - Supreme Court 1991, citing, "*Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 510, n. 4 (1974). Its primary substantive provision states that "[a] written provision in any maritime transaction or a **contract** evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such **contract** or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of 25*25 any **contract**." 9 U. S. C. § 2."

[4] Judicial construction of covenants

(a) A court shall construe a restrictive covenant to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.

(b) In any action concerning enforcement of a restrictive covenant, a court shall not enforce a restrictive covenant unless it is in compliance with the provisions of Code Section §13-8-53; provided, however, that if a court finds that a contractually specified restraint does not comply with the provisions of Code Section §13-8-53, then the court may modify the restraint provision and grant only the relief reasonably necessary to protect such interest or interests and to achieve the original intent of the contracting parties to the extent possible.

where the Defendants are charged with liabilities for their conspiracy and dealings through their agent Brock & Scott for purposes of disablement of the property.[5]

Venue is proper because significant events took place in the Southern District of Florida where Bayview "hatched the plans" then used interstate mail and other interstate communications to direct Brock & Scott to proceed against Ms. Hill's property.

---

[5] Under O.C.G.A. §10-6-85 provides; Individual liability of agent by undertaking, when exceeding authority, and for tort; negligence of underservant . **Comments: Ms. Hill holds Bayview liable under the prevailing Georgia Law on Agencies for its role in the conspiracy of disablement of her property.**

Also see, the Grand Trunk Factors applicable for the Courts inherent powers for Declaratory Judgments. "The factors, often called the Grand Trunk factors after the case, exists in the following: (1) Whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking] a). whether the underlying factual issues are important to an informed resolution of the case; b). whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and (5) whether there is an alternative remedy which is better or more effective. Id. at 554 (primary factors) (quoting Grand Trunk, 746 F.2d at 326); id. at 560 (sub-factors) (quoting Bituminous Cas. Corp. v. J&L Lumber Co., Inc., 373 F.3d 807, 814-15 (6th Cir. 2004)). As the Fifth Circuit has correctly noted, the Grand Trunk factors and their cousins in other circuits direct the district court to consider three things: efficiency, fairness, and federalism. Sherwin-Williams Co. v. Holmes Cty., 343 F.3d 383, 390–91 (5th Cir. 2003). We have never assigned weights to the Grand Trunk factors when considered in the abstract, Flowers, 513 F.3d at 563, and rightly so—the factors are not, of course, always equal. For example, a relatively efficient declaratory judgment (factors 1, 2, and 5) could very well be inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of principles we generally label "federalism" (factor 4). The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." **Comments;** Plaintiff finds that Grand Trunk Factors (1), (2) and (5) are present herein for this court to provide a declaratory judgments on matters presented by the Plaintiff herein.

## PARTIES SUBJECT TO THIS CAUSE OF ACTION

**3.**

Pursuant to Georgia's Contract law under OCGA §9-2-20[6] and under Fed. Civ. R. Proc. Rule 17(a), the parties to the Contract or alleged beneficiaries with interests to the action are known as follows:

Plaintiff is Janet Hill, the homeowner, titleholder and mortgagor to the mortgage executed in favor of America's Wholesale Lender (AWL) on 10/25/2005 two mortgages. **See Exhibits A, 100 and 200, respectively.**

Defendant, Bank of New York Mellon (BONY), is a bank that acts as a bank under the National Association to the Department of Treasury. BONY is regulated by Office of Comptroller of Currency, under Title 12 of the National Banking Act. BONY has represented itself to be the Trustee for Loan Trust Series 2005-58.[7]

Upon information and belief BONY maintains an office and principal place of doing business located at 1 Wall Street, New York, NY, 10005. Their Corporate

---

[6] OCGA §9-2-20. Parties to actions on contracts; action by beneficiary provides,
(a) As a general rule, an action on a contract, whether the contract is expressed, implied, by parol, under seal, or of record, shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent.
(b) The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.

[7] Georgia's Trust pursuant to OCGA § 53-12-200 - Capacity of trustee
A trustee shall have legal capacity under Georgia law to acquire, hold, and transfer title to property. An individual shall be eligible to serve as a trustee regardless of citizenship or residency. ***If the trustee is a corporation, partnership, or other entity, it shall be required to have the power to act as a trustee in Georgia.*** **Comments:** Here, Plaintiff Charges that BONY had no Certificate of Authority to Act in the State of Georgia as trustee for itself or for an unregistered Trust CWALT Loan TRUST 2005-58. BONY should be held liable as the Principal involved in the foreclosure action pursuant to Georgia's Agency Law and in contravention of trusts laws of entering could lead into judicial actions.

Officer is Gerald Hassell, Chairman and CEO. Plaintiff has served BONY's executive at their principal place of business.

Bayview Loan Services, LLC (" Bayview") is a for-profit Florida mortgage loan servicer, who at all times, acts on behalf of its principals asset recovery purposes and debt collection business in the State of Georgia and throughout the Southeast Region of the United States. Bayview's principal place of doing business is in Coral Gables, Florida.

**STATEMENT OF FACTS**

**4.**

Plaintiff fully incorporates all the above sections 1 through 3 of this complaint and further asserts his claims as follows:

Whereas, one of the prima facie evidence presented herein relates to the Florida Court ruling held in *Bank of America, N.A. et al v. Linda Nash et al,* 18th Circuit Court, Seminole County, FL, Case No. 59-201 1-CA-004389 (Sept. 15, 2014) to be applicable herein. **See Exhibit 300.**

Prior to any litigation, in good faith, Ms. Hill provided the above judicial ruling to each Defendant and to their agent-law firm. Additionally, Debt Validation Notices under 15 USC §1692 g, Qualified Written Request Notices under 12 USC §2605e and other applicable notices were made under her rights found in the Security Deed Contract Section 15. **See Exhibits A, 500, 600, 700, and 1000, respectively**.

Wherefore, both Defendants and their agent-law firm had prior knowledge about the Florida's Circuit Court's ruling and findings made against AWL's right to lend and where the loans were subject to claims of being void, *ab initio*. The Final Judgment cited that AWL's mortgages were void primarily due to the following facts:

1. That in 2005 and thereafter, AWL was unlicensed and not registered in State of New York, as purported on the face of their Security Instrument (or Security Deed or Mortgage). Wherefore, AWL was found by the Florida Court was not in compliance with state laws to lend to consumers.
2. AWL's failure was thought to be unamendable in Florida and Ms. Hill contends that AWL's lending practices are applicable for Georgia, too, under banking regulations and federal interstate lending requirements.
3. Whereas, the Florida Court held specifically that the loans transacted in 2005 were void. [**Emphasis added**]. Additionally, AWL did not correct their unlicensed or registration status. Whereas, not even Countrywide nor Bank of America sought to register and license AWL in accordance to state license and registration preconditions.

Wherefore, the facts about the Florida Court ruling found in **Exhibit 300** were made known to each Defendant by Ms. Hill.

Thereafter, the Defendants actions can only be described as "burying their heads in the sand". Whereas, the Defendants never addressed Ms. Hill's concerns regarding AWL's breach of contract, RESPA service violations, and FDCPA debt validation requirements. Rather, both Defendants continued to direct their legal agent-law firm, Brock & Scott, to proceed with disablement actions although the instruments and authorities to enforce the contracts were questioned. Ms. Hill factually cites by her exhibits herein, that Defendants had full knowledge of AWL's lending breaches. Thereafter, the Defendants had legal duties to address her concerns of voidness of her contract which was similarly situated to the Florida Final Judgment . Ms. Hill's believes that she is entitled her claim for a contractual breach, *ab initio*, because AWL's breached nationwide mortgage lending practices, accordingly.

However, with full knowledge, Bayview and BONY hired, directed and conspired with Brock & Scott to perform their tortuous schemes to foreclose upon the Plaintiff's home.

Whereas, it is factually shown that on or about December 30 2014, Brock & Scott served and published the first legal notice to foreclose in Fulton County's legal organ, *The Daily Report*, against Ms. Hill's property secured by the underlying mortgage. **See Exhibit 400.**

On or about, January 22, 2015, Ms. Hill sought help from the Consumer Financial Protection Bureau (CFPB) to investigate the matter. **See Exhibit 700.** Thereafter, Bayview replied to Ms. Hill's CFPB complaint by stating that *"this is not a Bayview Loan Servicing, LLC customer".* **See Exhibit 750.**

Thereafter, Brock & Scott provided written assurances that Plaintiff's home would not be foreclosed upon and rescinded the sale. **See Exhibit 800.**

In the meantime, legal notices under RESPA and FDCPA were never investigated and replied to in accordance to the prevailing laws. **See Exhibits 500, 600 and 650, respectively.** The failure to address these legal notices were the basis that Ms. Hill sought a CFPB investigation.

Whereas, on or about April 1, 2015, a second notice with the intent to foreclose was given by Brock & Scott to Ms. Hill. This was done inspite of the following facts:

1. A prior action had been voluntarily stopped for the same false claim.
2. That the Defendants had been served with consumer notices that were never complied with and copies of the Florida Circuit rulings affecting AWL's Lending practices were fully known to be unlawful and fatally erroneous as a purported lender.

3. That the Defendants had full knowledge of the legal and binding ruling affecting AWL's voided mortgage contracts and questionable lending practices.
4. That the Defendants never advised Ms. Hill that she had a right to contest their action to accelerate under Section 22 (d) of the security instrument pursuit to Georgia's ruling held in *Bank of America v. Wedereit.* Whereas, every attempt to foreclose by Brock &Scott were in contravention to Ms. Hills Security Deed and in contravention to Georgia's non-judicial foreclosure statutes.
5. That the Defendants should have but never sought a declaratory judgment or a petition to reform the contract as a due process procedure for equitable relief affecting defective contracts.
6. That the Defendants engaged in unfair and deceptive business practices by ignoring Ms. Hill's notices and unfairly sought a non-judicial foreclosure against a questionable instrument. Upon information and beliefs, Defendants are in contravention of OCGA §23-2-114 requirements that all deed under power of sale clauses are to be strictly construed and fairly administered.

Whereas, Bayview, BONY and Brock and Scott ignored the Florida's Court's Order of similar cases involving ALW's mortgage breaches due its non-registration and licensing status. In the Florida case, the beneficiaries attempted to enrich themselves and sought to enforce the contracts although the instruments were dubious at best. This action is equivalently situated.

Upon information and belief, the actions by the agent to meddle with Ms. Hill's property and peaceful enjoyment falls upon Bayview and BONY for liabilities of the principals for the actions of their agent's wrongdoings. Such

liabilities are believed to be compensable under Georgia's Agency's law pursuant to OCGA §10-6-60, but not limited to other civil land tort laws in Georgia.

Wherefore, the Plaintiff seeks equitable relief from this Court for purposes of determining if the cause of actions warrants a favorable equitable relief to restrain the Defendants from encroaching on Ms. Hill property permanently.

Whereas, among other things, Ms. Hill shows that the Defendants engaged in willful and wanton conduct to unlawfully seize her home, used fraudulent publications to gain by "unjust enrichment" from a foreclosure sale, and misrepresented their rights to enforce a breached mortgage contract void *ab initio*. Whereas, the Defendants knew or should have known that they were engaging in a scheme to wrongfully levy upon Ms Hill's property.[8]

Whereas, this petition is brought to a court of competent jurisdiction to provide a declaratory judgment about the relationships of the parties with respect to AWL's lending practices.

Whereas, upon information and beliefs, Defendants could not benefit from AWL's unlicensed practice to lend throughout 2005. AWL's action is thought to be unamendable. Whereas, the purported successors of AWL, Countrywide or

---

[8] *See* *Tacon v.Equity One, Inc.*, 280 Ga. App. 183, 188, 633 S.E.2d 599, 603 (2006) (explaining that the "common law rule [of trespass] is codified in O.C.G.A. § 51-9-1, which provides that every act that unlawfully interferes with a citizen's right of enjoyment of his private property "is a tort for which an action shall lie"). Here, Georgia Courts have followed without preconditions:

> "Liability for a trespass upon real property produced by a voluntary act is absolute and does not have to be grounded in negligence, so long as the act causing the trespass was intended. *Brooks v. Ready Mix Concrete Co.*, 94 Ga.App. 791, 793(1), 96 S.E.2d 213 (1956). This common law rule is codified in OCGA § 51-9-1, which provides that every act that unlawfully interferes with a citizen's right of enjoyment of his private property "is a tort for which an action shall lie." [**Emphasis Added**.] **Comments:** Plaintiff sets forth that Brock Scott letters, particularly the December 30, 2014 and April 1, 2015 notices, shows actual intent to have trespassed and plans to continue to trespass. Their intent should qualify the Plaintiff to assert claims for relief under the above tort code.

Bank of America, never corrected the AWL's licensing and registration deficiencies.

Plaintiff gives judicial notice for this Court to accept all pleadings, foot notes and case laws presented herein as true and for purposes of deciding matters herein.

**ADDITIONAL FACTORS FOR CAUSE OF ACTIONS**

**5.**

Plaintiff fully incorporates all the above sections 1 through 4 of this complaint and further asserts her claims as follows:

Whereas, neither Bayview or BONY were the Creditors that provided Ms. Hill with purchase money, extension of credit or the loan servicing under the original security instrument **[Emphasis added].**

Whereas, the First and Second Liens were executed by Ms. Hill in favor of America's Wholesale Lender (AWL) as duly noted on the face of the Security Deed recorded on Fulton County land records. **See Exhibits A, 100, and 200, respectively.** Countrywide Home Loan Servicing, LP provided the original loan servicing for about four and one half years.

Whereas, neither were BONY nor Bayview were the creditors who extended credit terms or consideration for Ms. Hill constituting any rights under the First or Second Liens by the respective Security Deeds.

Whereas, AWL was not duly authorized, as a foreign corporation, to lend in Georgia. Georgia Secretary of State and Georgia Department of Banking would have been reliant upon AWL to have been duly licensed and formulated in New York, as a Corporation. The recent judicial ruling, by findings of fact, states that AWL was not properly incorporated in New York and therefore its rights in Georgia are equally questionable.

Wherefore, AWL had NO license to lend money in Georgia. Whereas, Ms. Hill was reliant upon AWL's presentment that the purported lender

had fully complied with all licenses and registrations in New York. Plaintiff knows with certainty that AWL licensing in New York was not a valid undertaking as purported on her contract. **See Exhibits A and 300, Judicial Final Judgment.**

Wherefore, Ms. Hill shows where her contract was breached from the beginning. She discovered this prima facie evidence from the Florida Ruling in *Bank of America et al v. Linda Nash et al* . Ms. Hill is reliant of the Final Judgment in the proceedings herein as a legal basis for her claims. Additionally, Ms. Hill loan should qualify as a consumer transaction that is subject to fraud and misrepresentations under the purview of Consumer statutes under the Fair Debt Collection Practices Act (FDCPA), RESPA and the GFABA, accordingly. Ms. Hill is not seeking relief under the higher federal statute under Fed. R. Civ. P. Rule 9. She urges the court to consider that her claims should come under the strict liabilities found under the consumer statutes, accordingly. Ms. Hill affirms that she engaged with AWL as a consumer loan transaction to finance her home.

**FDCPA AND GFBA CLAIMS**

**6.**

Plaintiff fully incorporates all the above Sections 1- 5 of this complaint and further asserts her above claims as follows:

Plaintiff charges that BONY should be held liable for its agents under OCGA §10-6-60[9] and that Bayview is liable for its own torts under OCGA §10-6-85.

[9] See In *SOUTH ATLANTIC &c. CREDIT ASSN. v. Gibbs,* 361 SE 2d 167, 257 Ga. 521 - Ga: Supreme Court, 1987, ... Held: "Generally a principal is bound for the care, diligence and fidelity of his agent in his business, and shall be bound for the negligence and fraud of his agent in the transaction of such business". See [OCGA § 10-6-60]; Also see, *Finch v. Hill,* 146 Ga. 687, 688 (92 SE 63); *Loyless v. Hesse Envelope & Lithographing Co.,* 10 Ga. App. 660, 663 (74 SE 90); *City Bank v. Kent,* 57 Ga. 283, 303.

Plaintiff charges that Bank of America (as the alleged successor servicer to Countrywide) had declared that her Note was in default since about October 1, 2010.

Thereafter, an alleged servicing and the transfer of the deed to secure occurred in 2011.

Whereas, Plaintiff sets forth where Brock & Scott sent her a notice for a foreclosure sale on or about December 30, 2014.

Whereas, upon belief, Brock & Scott fully reinstated her mortgage by its January 26, 2015 foreclosure withdrawal notice.

Thereafter, on or about April 1, 2015, an additional "Notice of Intent to Foreclose" was sent to Ms. Hill **See Exhibit-900.**

Wherefore, among other things, MERS's belated Assignment establishes a factual time referenced for determining when BONY might have acquired the Security Deed as a delinquent obligation. Whereas, the Loan Trust's acquisition is thought to be applicable for Ms. Hill's claims in accordance with the FDCPA's 15 USC §1692 et seq. for debt collectors violations and under the GFBA for deceptive practices.

Wherefore, upon information and belief, BONY fits the definition of an assignee of an instrument made by defunct Creditor. BONY's status as Debt Collector is determinable under the FDCPA. Upon belief, Defendants joint actions were done in contravention to the FDCPA statutes under 15 USC §§§1692 a, e and f (6), accordingly.

Upon information and belief, neither Bayview nor BONY had a present right of enforcing the debt for purposes of disablement under subsection f (6).

Upon information and belief, both Bayview and BONY used false statements and misrepresentations of the nature of the debt, the amount of the date and the validity of the debt under subsections a and e, accordingly.

Upon information and belief, both Bayview and BONY should be found as debt collectors due to when the debt was allegedly acquired under subsections a, accordingly.

**Breach of Contract and Wrongful Foreclosure Claims**

**6.**

Plaintiff fully incorporates all the above Sections 4 through 5 of this complaint and further asserts his claims as follows:

Plaintiff charges that BONY is liable for its agents under OCGA §10-6-60 and that Bayview is liable for its own torts under OCGA §10-6-85.

Whereas, the agent law-firm, Brock & Scott's, first and second acceleration notices were in contravention to the contract terms under Section 22 of the Security Deed.

Furthermore, Plaintiff sets forth where the foreclosure action breached the plain language terms of his Security Deed Contract pursuant to Section 22 (d). **See Exhibit A page 10.**

It is important to note that one of the crux of Ms. Hill's wrongful foreclosure claims centers around the contractual breaches under the Security Deed. The Uniform Security Instrument, in pertinent parts of Section 22 (d), provides the following:

> "22. **Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument .... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in this notice may result in

> acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." [10]

Plaintiff shows six reasonable causes for which she supports contract breach claims and where the legal duties were abridged, accordingly:

1. Whereas, after the Assignments were entered in Georgia's land records in or after 2011, then thereafter BONY should have been liable under its terms. See **Exhibits A, 100 and 200.**
2. Whereas, No Creditor nor Agent sent to Ms. Hill all of the required notices as cited in Section 6 above. The preconditions for an Acceleration Notice are contractually binding and it speaks for itself.

---

[10] The plaintiff charges attempted wrongful foreclosure by the veracity for the legal requirements which are held to be in a strict compliance under Section 22 (d) of the Security Deed (mortgage instrument). Ms. Hill's legal theory as has been supported by the recent decision by Georgia's Court of Appeals. The Appellate Court precedent ruling held in *BAC Home Loans Servicing, L.P. F/K/A Countrywide Home Loans Servicing, L.P. v. Wedereit*, No. A14A0131, Court of Appeals Georgia, decided on July 8, 2014, Reconsideration Denied July 29, 2014 is believed to set the future legal standard in deciding breach of contract under the Security Deed in wrongful foreclosure cases. Whereas a plethora of High Courts agree on the "plain language" interpretation found under Section 22 (d). See Supreme Court of Alabama in *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 173 (Ala. S. Ct. 2012) holding: "The acceleration letter is just that a notice, that the debt had been accelerated, not a notice of intent to accelerate. The only option given and published in the county legal organ was a notice contemplating a payment of the entire debt was due, which is an approach in direct contravention of paragraph 22." Also, see JPMorgan Chase Bank, N.A. v. Blank, 2014-Ohio-4135, Court of Appeals, 11th Appellate District Ashtabula County, OHIO, Also see, *CitiMortgage, Inc. v. Elia,* 2011-Ohio-2499, Ninth Judicial District County of Summit (May 25, 2011), and also see, Ogden v. Gibraltar Savings Ass'n, 640 S.W.2d 232 (Tex.1982).

3. Whereas, Brock & Scott's acceleration notices content were noticeably deficient of the preconditions that should have been given under Section 22 (d) of the Security Deeds.
4. Whereas, Brock & Scott's notice did not set forth where the Plaintiff could file a court action to raise a defense against the acceleration and the pending foreclosure sale.
5. Whereas, Ms. Hill had defenses to raise because, BONY never sent her the proper 30-day right to cure, or that she may have the right for reinstatement after acceleration, or where the acceleration notice was premature due to their failures to perform under their legal duties to the contract terms. Additionally, Ms. Hill could have challenged the standing of BONY to foreclose as a mere Debt Collector because AWL's lending practices in 2005 should have been determined first and foremost.
6. Additionally, because Georgia permits a non-judicial foreclosure, the action must be done strictly in fairness in compliance with OCGA §23-2-114.[11]
7. Wherefore, Ms. Hill charges that the purported non-judicial sale was not fair and the procedures employed fails to meet the legal standards under Georgia's equitable law, accordingly.

---

[11] See Frank S. Alexander, GEORGIA REAL ESTATE FINANCE AND FORECLOSURE LAW, § 1:5 (2011–12 ed.). In authorizing this manner of foreclosure, the state provides creditors with the flexibility and efficiency of a non-judicial procedure upon a debtor's default. However, given the significant power that such a procedure vests in the foreclosing party, the law requires that powers of sale "shall be strictly construed and shall be fairly exercised." O.C.G.A. § 23–2–114.1 Moreover, for loans secured by residential property, O.C.G.A. § 44–14–162.2 specifies the required elements of the notice letter that a creditor must send prior to the non-judicial foreclosure sale. This statutory section requires that the creditor advise the homeowner of the "individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 44–14–162.2. The creditor must send the statutory notice by "registered or certified mail or statutory overnight delivery, return receipt requested." Id. The statute expressly requires a higher level of notice for residential loans than nonresidential loans.

## BONY AND BAYVIEW VIOLATIONS OF AGENCY LAWS UNDER OCGA §10-6-60

**7.**

Plaintiff fully incorporates all the above sections 4 through 6 of this complaint and further asserts his claims as follows:

Plaintiff charges that BONY is liable for its agents under OCGA §10-6-60 and that Bayview is liable for its own torts under OCGA §10-6-85.

Ms. Hill brings her claim for where Defendants were malicious and reckless in their pursuit of two attempts at foreclosure and disablement of her property. Fundamentally, the homeowner was not given her a notice and contractual right to contest under the acceleration as required by the Security Deed Section 22 (d).

Whereas, Brock & Scott, a duly licensed law firm, twice wrongfully published an advertisement for an acceleration procedure against Ms. Hill's estate. Brock & Scott alleged a default by failure to pay the Creditor under the terms of the underlying Security Deed without complying with the preconditions for acceleration notices found in contracts. (See Georgia's controlling law in *Bank of America v. Wederiet (2014) supra)*.

Whereas, thereafter, Brock & Scott was acting at all times on behalf of Bayview and BONY which should place the preponderance of liabilities upon the principals.

Upon belief and information, this Court is asked to observe the following efforts by the Plaintiff to avoid litigation by the following events:

a. Whereas, on or about January 22, 2015, Ms. Hill established a consumer complaint with the CFPB over the contract dispute. **See Exhibit 700**.
b. Whereas, upon receiving knowledge of Florida's Final Judgment affecting AWL's mortgages, and by Bayview's admission that Ms Hill is "NOT" a customer", Brock & Scott withdrew the initial foreclosure sale.

c. Wherefore and thereafter, Defendants engaged in actions to sieze Ms. Hill's home in April of 2015. Upon belief, Ms. Hill gave fair notice to provide Defendants with the opportunity to act in good faith. Bayview and BONY, however, after 60 days had passed on CFPB Agency's review of a consumer complaint, the Defendants re-engaged in unconscionable, malicious and reckless conduct in their second attempt to proceed in a foreclosure sale. **See Exhibits 700 and 800, respectively**. Ms. Hill believes that Bayview deceived the CFPB by their false statements and only rescinded the first foreclosure only as a ploy. Ms. Hill seeks to prosecute under the GAFBA and applicable civil land torts.

d. Defendants knew or should have known that a genuine controversy existed over the consumer rights due to AWL's lending breaches. Ms. Hill believes that her contract breach is unamendable and seeks a declaration for it to be declared void or in the alternative, voidable as determined in the ruling in September 15, 2014, where the underlying mortgage contract is **declared void** by a Florida state judicial ruling. Thereafter, upon belief, fraud was perpetrated upon the consumer by Bayview and BONY's malicious intent to deny any fair hearing on Ms. Hill's land title rights. Upon belief, Bayview conspired with BONY to use Brock & Scott to falsely publish the foreclosure legal notice and thereafter intended to seize her property. As a result, BONY and Bayview attempted to deny Ms. Hill of her constitutional guarantees under Georgia's Bill of Rights and under the U.S. Sixth Amendments, respectively.

Wherefore, in consideration of the above, Ms. Hill maintains her right to charge constitutional violations by a State licensed law group, Brock & Scott, for acting under the "color of law", violating their oath of office at the same time, while engaging in wrongdoings on behalf of the Defendants.

## CLAIMS FOR DAMAGES & DETERMINATION

**8.**

Plaintiff fully incorporates all the above sections 1 through 7 of this complaint and further asserts he claims by counts in the following:

**Count 1: Plaintiff seeks actual damages suffered for an impaired mortgage contracts in the total full of $494, 500.00 or in the alternative, for this court to deem the contract for voidness.** Defendants sought disablement by wrongful foreclosure unfairly. Her property is impaired by the two liens originated by AWL and needs to be removed. **See Exhibit-100 -1st Lien Security Deed Assignment.**[12]

**Count 2: Plaintiff seeks declaratory judgment damages where** Bank of New York Mellon unlawfully engaged in actions as fiduciary Trustee for trust duties as required in Georgia without the trust first meeting the registration requirements. Trusts are required to be registered with the Secretary of State in accordance to Georgia's trust laws. Wherefore, Ms. Hill charges that BONY was without the legal right to attempt to foreclose in Georgia or to litigate such actions, therein, as Trustee.

**Count 3**: **Plaintiff seeks declaratory judgment damages where** BONY has misrepresented the facts about Loan Trust, CWALT 2005-58 in which the Trust is quite possibly not in existence and it has no Registered Agent in New York, Delaware or in Georgia. Furthermore, if the loan trust exists, however, Ms. Hill contests this to be factual, then BONY had a legal duty for either pursue a declaratory judgment on their rights or sought a reformation of the mortgage. BONY failed to do either pre-foreclosure actions in good faith.

**Count 4**: Ms. Hill charges that BONY and Bayview with FDCPA violation under 15 USC 1692 f (6). Whereas, neither entity had the present right to foreclose on the

---

[12] The Second Lien was originated by AWL in the amount of $30K. See Exhibit 200 evidencing the 2nd Lien Assignment to BONY on behalf of another LoanTrust. All instruments are sought for declaratory judgment for voidness.

consumer's property. Whereas, the loan trust either acquired the debt after it was already delinquent or factually, the loan trust was not a statutory or legal entity with the standings to publish legal notices to foreclose against Ms. Hill's estate. Subsequently, the loan trust would have been required to participate in Georgia Courts to prosecute for possession. Whereas, unregistered trusts are prohibited to prosecute in any Georgia Court in accordance with Georgia's trust laws.

**Count 5: Plaintiff seeks declaratory judgment for damages where** BONY and BAYVEIW misrepresented the fact that the Loan Trust. 2005 -58 had no standing to prosecute Ms. Hill for foreclosure because, the veracity of the mortgage contract was known to be inherently defective and more than likely void. Whereas, the Loan Trust 2005-58 is not believed to be a beneficiary of the defunct entity, AWL, which was at all times unregistered or licensed in New York or Georgia.

**Count 6:** Ms. Hill seeks relief of this Court to determine the affects of the Final Judgment made against AWL's instruments originated in 2005 per the Florida ruling held in *Bank of America, et al v. Linda Nash et al.* The Plaintiff seeks a judgment affecting both of her security 1st and 2nd liens, accordingly. As a result, declaratory relief is sought for this Court to determine if AWL could pass legal title to MERS when it was not a legal entity to do so. **See Exhibit 300.**

**Count 7: Plaintiff seeks damages under the RESPA, FDCPA and the GFBA** where BONY and Bayview deceived the consumer in their debt collection practices and their after engaged in disablement actions. Bayview is liable for not complying under RESPA's complaint resolution under 12 USC 2605 (e) and (k). Whereas, Bayview failed to timely, respond, investigate or provide information requested of the servicer under the Qualified Written Request Notice and RESPA laws. Whereas, both Defendants and their agent-law firm, Brock & Scott, refused to comply with the FDCPA Debt Validation Notices. The content of the notices presented in **Exhibits 400, 500, 600, and 650**, respectfully, speaks for themselves.

Whereas, at no time have Bayview nor BONY responded to the consumer in compliance of applicable consumer statutes.

**Count 8: Plaintiff seeks** judgment for damages under the applicable sections in FDCPA 1692 et seq. where BONY and Bayview are believed to have met the definition of debt collectors, jointly or severally. At no times were either entity Ms. Hill's secured creditor. Whereas, even BONY's assignments were received after her debt was known to be delinquent.

**Count 9: Plaintiff seeks damages from** BONY, as Trustee for the Loan Trust Series 2005-58 and BAYVIEW for their combined tortuous actions through their agent Brock & Scott. Bayview, the alleged loan servicer hired Brock & Scott on behalf of BONY, as Trustee. Damages should include all actions by the law firm including breach of contract under Section 22(d) of the Security Deed, deceptive trade practices under GAFBA, Georgia's Agency Laws, contract breaches where judicial and collateral estoppels were known but, Defendants failed to abate their own actions.

**Count 10:** Plaintiff seeks compensable damages permitted by Georgia's equity laws on rescission of her mortgage contract. Whereas, a court determination may permit a compensable recovery. Whereas, Ms. Hill seeks this kind of equitable relief because, she shows evidence that in 2005, AWL was unlicensed to lend in Florida and Georgia. AWL deceived and induced Ms. Hill and other consumers into obtaining illegal mortgage contract without having performed its prerequisite duties of being a licensed corporation in compliance with national and state lending laws . Ms. Hill is reliant on the 18th Circuit of Seminole County Florida's findings of fact to be applicable herein. **See Exhibit 300.**

**Count 11: Plaintiff seeks strict liability damages against** BONY and Bayview's engagement in FDCPA violations of deceptions under 1692 9e and by attempting to seize a property without a present right under 1692 f (6) through their debt

collections activities. Whereas, neither party lent money or extended credit to her as required under 1692 a et seq.

**Count 12: Plaintiff seeks damages from** BONY and Bayview engagement in land rights violations by deceiving the public with falsified foreclosure advertisements in an overt attempt to convert the Ms. Hill's property without a bona fide contractual right to do so. Plaintiff seeks claims under conversion, unjust enrichment and trover under OCGA §51-9-1.

**Count 13: Plaintiff seeks damages from** BONY and Bayview actual damages in the amount of $260,000.00, jointly and severally. Whereas, Defendant's inflicted the damages as a result of their conspiracy conducted to disable Ms. Hill from her home. Defendants used false publications, unfair billing and credit damage. Whereas, Bayview falsely reported delinquencies to the Credit Bureaus and foreclosure proceedings. Whereas, Ms. Hill has attempted seek employment and have the Credit Bureaus remove the erroneous entries due to the Florida Court's Final Judgment held against AWL. However, Bayview continues to re-apply the false data in contravention of the FCRA. **See Exhibits 500 and 1100**, respectively.

**Count 14: Plaintiff seeks damages from** BONY and Bayview for engagement in breach of her Security Deed Contracts under Section 22(d) are compensable under the GAFBA OCGA §10-1-390 et seq. and under OCGA §23-2-114. The laws permit setting aside the wrongful foreclosure, compensating for attempted foreclosure, and restraining from future foreclosure actions.

**Count 15: Plaintiff seeks damages from** BONY and Bayview for court costs and legal fees, so that, she can pay for an attorney to represent the issues at trial.

**Count 16: Plaintiff seeks actual damages from** BONY and Bayview for any other damages, punitive or compensatory or statutory deemed appropriate by this court or by a jury panel.

## RELIEF SOUGHT

**9.**

Plaintiff fully incorporates all the above sections 1 through 8 of this complaint and asserts her claims as follows:

1. Plaintiff seeks award for all counts of damages 1-16 above and from her Table of Damages, attached, hereto. **See Exhibit 1200.**
2. Plaintiff seeks fraud, deception and misrepresentation claims under the Consumer Protection Statutes of the GAFBA and FDCPA but, not by the heighten pleadings standard by F.R.C.P. Rule 9 or the local rules of this court.
3. Plaintiff seeks an award of compensatory damages sustained by Ms. Hill as a result that Defendants' violated of Georgia foreclosure laws under OCGA §44-14-162.2 and under OCGA §23-2-114, Whereas, the attempted foreclosure sales were not advertised in good faith and they were not fairly exercised.
4. Plaintiffs seeks equitable relief for Counts 1,2,3,5 6, and 8 in the above found in Section 8.
5. An award of additional or special or punitive damages under Georgia's tort codes OCGA §51-12-5.1 and under OCGA §51-9-1, respectively, for civil trespassing, conversion and unjust enrichment in favor of Ms. Hill against her adversaries BONY and Bayview conduct, jointly and severally. Whereas, Ms. Hill shows that Defendants conspired by gross negligence, engaged in abusive litigation, and intentionally meddled with Plaintiff's real property. Whereas, their conduct is compensable as land torts violations under Georgia's laws.

6. Plaintiff seeks a determination that the Defendants are jointly or severally liable for the actions of Brock & Scott's conduct and breached notices cited in the above Section 6, herein.
7. Plaintiff seeks finding of facts and declaratory judgment that any foreclosure attempt or deeds made during a non-judicial proceeding were improper, unfair and are null and void. Plaintiff seeks to have her title to remove the "cloud of AWL's instruments." In the alternative, Plaintiff is awarded equitable rescission of her contract and awards for said damages in accordance with the applicable statues, cited herein or by the Court's findings of fact.
8. Plaintiff seeks court costs and attorney fees cast upon the Defendants.
9. To Grant such other equitable relief as the Court deems proper.
10. **DEMAND FOR TRIAL ON ANY ISSUE OF FACT BY JURY IS INVIOLATE.**

Plaintiff sayeth naught more.

____________________________

Janet Hill, Affiant.

## VERIFICATION FOR PURPOSE OF COMPLAINT

Now comes, Janet Hill, herein referred to as Plaintiff, in the above cause of action, against the above named Defendant **Bank of New York Mellon**, f/k/a Bank of New York, As Trustee for The Certificateholders of CWALT Series 2005-58 and Bayview Loan Services, LLC, affirms under the penalty of perjury, that all of the statements contained in the complaint are true and correct to the best of my personal knowledge and beliefs. I am not indebted to any Creditor.

Pursuant to 28 USC §1746 and under OCGA §9-10-111 where an affidavit or verification is required, I further attest and depose before this court that by my signature to the truthfulness of documents are entered from original sources, assertions and statements are entered into the court records with good faith intentions and not for frivolous manners.

**Executed and submitted on this Day 28th of April 2015.**

**Janet Hill, Pro Se, Affiant**
**All Rights Reserved**
**543 Auburn Ave. N.E.,**
**Atlanta, Georgia 30312**
**404-861-6036**

**Certificate of Service**

I, the undersigned to Certify that I have served or summons the Defendant according the F.R.C.P. Rule 4 by process server to the person at the following:

**Wilkie D. Ferguson, Jr.**
**U.S. Courthouse**
Clerk of Court Office
400 North Miami Avenue
8th Floor
Miami, FL 33128
(305) 523-5100

Bank of New York Mellon.
c/o Gerald Hassell, CEO
1 Wall Street
Manhattan, NY
New York, NY 10005

Serviced By Secretary of State of Georgia

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables FL 33146
**Registered Agent: Corporate Service Co.**
**40 Technology Parkway South , Suite #300**
**Norcross, GA 30092**

**Executed on this Day 23rd of April 2015.**

**Janet Hill, Pro Se**
**All Rights Reserved**
**543 Auburn Ave. N.E.,**
**Atlanta, Georgia 30312**
**404-861-6036**

# EXHIBITS

(purposefully left blank)

Exhibit A

Deed Book 41205 Pg 241
Filed and Recorded Oct-25-2005 08:33am
2005-0367111
Georgia Intangible Tax Paid $1,392.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

ASGN
DE Book 50135 Page 399

Gibeon Partners
1720 Peachtree St., Suite 1040N
Atlanta, GA 30309

After Recording Return To:
JANE DOCMAN
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TERRI MILLER

[Space Above This Line For Recording Data]

114432646 [Escrow/Closing #]

00011443264610005 [Doc ID #]

# SECURITY DEED

MIN 1000157-0005944053-3

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated OCTOBER 06, 2005 , together with all Riders to this document.
**(B) "Borrower"** is
JANET HILL

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
AMERICA'S WHOLESALE LENDER



* 2 3 9 9 1 *

* 1 1 4 4 3 2 6 4 6 0 0 0 0 0 2 0 0 6 A *

Exhibit-100



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Exhibit-200

Deed Book 50135 Pg 399
Filed and Recorded Jun-14-2011 02:12pm
2011-0158007
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

11-02199, Janet Hill

Return to:

Shuping, Morse & Ross, LLP
6259 Riverdale Road, Suite 100
Riverdale, GA 30274
ATTN: S. Cobb
MIN#1000157-0005944053-3

# ASSIGNMENT

**FOR VALUE RECEIVED**, the undersigned, being the present owner of such secured interest by virtue of being the original Grantee or the heir, assign, transferee, or devisee of the original Grantee, hereby transfers, without recourse, to **The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58** whose address is 101 Barclay St., New York, NY 10286 all right, title, interest, powers and options in, to and under that certain Deed to Secure Debt from **Janet Hill** to **Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for America's Wholesale Lender** dated **October 6, 2005** and recorded in Deed Book **41205**, Page **241**, **Fulton** County, Georgia records, as well as the land described therein and the indebtedness secured thereby.

**IN WITNESS WHEREOF**, the undersigned has hereunto set its hand and seal this day of June 1, 2011.

**Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for America's Wholesale Lender**

**BY:** Debbie Nieblas **(SEAL)**
**Name & Title:** DEBBIE NIEBLAS Assistant Secretary **(Corporate Seal)**

ELECTRONIC REGISTRATION SYSTEMS CORPORATE SEAL 1999 DELAWARE

Witness Jeanine Abramoff

Witness Sebai Muradyan

**Notary Public**
**My Commission Expires:** ______

See Attached

Exhibit - 300.

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP,

CASE NO. 59-2011-CA-004389
DIVISION: 14-K

Plaintiff,

COPY

vs.

LINDA A. NASH, et al.,

Defendants.
_______________________________/

## FINAL JUDGMENT

THIS ACTION came on for Trial on September 15, 2014. All parties appeared and announced to the Court that they were ready for Trial. Plaintiff presented its case in full. After Plaintiff completed presentation of its case, and Defendant completed cross examination of Plaintiff's sole witness who was Plaintiff's representative, Chad Anderson, the Court announced that it was prepared to enter a Final Judgment based upon the evidence presented by Plaintiff, consisting of the following: a). Exhibit 1- Note, b). Exhibit 2- Mortgage, c). Exhibit 3- Notice of Intent to Accelerate, and d). Exhibit 4- Payment History, and Defendants cross examination and presentation of its Exhibit 1, the Assignment of Mortgage, without the necessity of Defendant presenting its witness and testimony,

The Courts finds as follows:

1. The Mortgage dated May 24, 2005 was executed by the Borrower, Linda A. Nash, payable to the alleged Lender, America's Wholesale Lender, which was recited to be a New York Corporation. The Mortgage recited that: "the Note states that Borrower owes Lender $58,500.00.

2. The Note was in the amount of $58,500.00, reciting that the alleged Lender "is America's Wholesale Lender".

3. The Note bears an endorsement –in-blank on page 3 thereof as follows: "pay to the order of (____________) without recourse" and underneath that statement, the Note purported to be endorsed by "Countrywide Home Loans, Inc., a New York Corporation doing business as America's Wholesale Lender."

4. The Plaintiff's sole witness testified that the Assignment of Mortgage presented as

Defendant's documentary evidence at the Trial, a copy of which was attached to Plaintiff's Complaint, was the only document he was aware of which purported to transfer any interest in the Mortgage, or the Note, except for the blank endorsement on page 3 of the Note, as set forth above.

5. Plaintiff's witness acknowledged that he knew of no other documents purporting to transfer any interest in the Note, or the Mortgage, which were in existence relative to any transfer of ownership interest in the Note, or the Mortgage, which Plaintiff sought to foreclose in this action.

6. On cross examination, Plaintiff's witness confirmed that he knew of no evidence of transfer of the ownership interest in the Note, other than the blank endorsement on page 3 thereof, signed on behalf of Countrywide Home Loans, Inc., DBA America's Wholesale Lender.

7. Plaintiff's witness testified that he was aware that America's Wholesale Lender was not incorporated in the year 2005 when the Note and Mortgage were signed, and that no such corporation was subsequently formed by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents. Plaintiff's witness also confirmed that he was aware that America's Wholesale Lender did not ever have a Lender's license in the State of Florida and did not have authority to do business in Florida, as a New York Corporation, under Florida Statute 607.1506.

8. Plaintiff's witness also testified that he has no knowledge of the existence of any document transferring any interest in the subject Mortgage Note or Mortgage from the Lender to Fannie Mae, who is alleged in the Plaintiff's Complaint to have been the owner of the Note at the time the Mortgage Foreclosure Complaint was filed.

9. The Court finds that:

a.) America's Wholesale Lender, a New York Corporation, the "Lender", specifically named in the mortgage, did not file this action, did not appear at Trial, and did not Assign any of the interest in the mortgage.

b.) The Note and Mortgage are void because the alleged Lender, America's Wholesale Lender, stated to be a New York Corporation, was not in fact incorporated in the year 2005 or subsequently, at any time, by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents.

c.) America's Wholesale Lender, stated to be a corporation under the laws of New York, the alleged Lender in this case, was not licensed as a mortgage lender in Florida in the year 2005, or thereafter, and the alleged mortgage loan is therefore, invalid and void.

d.) America's Wholesale Lender, stated to be a New York Corporation, did not have authority to do business in Florida under Florida Statute 607.1506 and the alleged mortgage loan is therefore invalid and void.

e.) Plaintiff and its predecessors in interest had no right to receive payment on the mortgage loan because the loan was invalid and therefore void because the corporate mortgagee named therein, was non-existent, and no valid mortgage loan was ever held by Plaintiff or its predecessors in interest.

f.) The alleged Assignment of Mortgage which purported to transfer interest in this mortgage to BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Servicing, LP, as assignee, was invalid because Mortgage Electronic Registrations Systems, Inc. (MERS), as nominee for America's Wholesale Lender had no authority to assign the ownership interest of said mortgage, because MERS was not the owner of the subject mortgage and was only a nominee for America's Wholesale Lender, an alleged New York Corporation which was a non-existent Corporation. Said purported assignment was without authority, and therefore invalid.

g.) Plaintiff's witness had no knowledge of who or what entity might have instructed MERS as nominee, to attempt to assign or transfer any interest in said mortgage, which in any event would have been invalid because that entity (MERS) had no ownership interest in the mortgage and was merely named as a nominee for the non-existent corporate mortgagee..

10. Based upon the foregoing, the Plaintiff, Bank of America, NA, has no standing to bring this action. The Plaintiff has no legal right to attempt to claim ownership of the subject Note and Mortgage, or any right as servicer, for some other unknown entity, and is without any legal basis to attempt to foreclose the subject Mortgage, or to collect on the Mortgage Note, because America's Wholesale Lender, a New York Corporation, did not exist in 2005, and was never formed as a Corporation by Plaintiff or its predecessors in interest. The collection of mortgage payments by the Plaintiff and its predecessors in interest, was therefore illegal and they were without any legal right to receive and use or disburse the funds therefrom on behalf of any owner of the Note and Mortgage, or any other party.

11. Defendant is therefore entitled to recover from Plaintiff, all funds reflected on Plaintiff's Exhibit 4 which Plaintiff's witness testified reflected the payment history of monies paid by Defendant to Plaintiff or its predecessors in interest, because the subject note and mortgage were invalid because the alleged mortgage lender did not exist and did not have the legal right to receive and retain or disburse said funds.

12. Defendant is also entitled to recover from Plaintiff, all costs and attorney's fees incurred by Defendant in this action pursuant to the terms and conditions of the subject Mortgage Note and Mortgage upon which Plaintiff based this action, and pursuant to the terms of Florida Statute 57.105, as the prevailing party.

58,500

13. The Court finds that the principal and interest paid by Defendant to Plaintiff, or its predecessors in interest, in the amount of $55,680.28, as shown on Plaintiff's Exhibit 4, presented at Trial, is recoverable by Defendant from Plaintiff and Defendant is entitled to Judgment against Plaintiff in that amount of $55,680.28, plus interest on the amount of each respective payment at the statutory rate for each year in question from the year 2005 through the date of Defendant's last payment in October, 2010, in the amount of $8,206.87 and continuing to the date of this Final Judgment. Defendant has presented to this Court, a computation of the amount of said payments and the interest due thereon from the date of each respective payment to September 30, 2014 in the aggregate amount of $20,000.44 with per diem at the rate of $8.86 per day thereafter. Judgment is therefore entered for Defendant and against Plaintiff in the amount of $55,680.28, plus interest in the amount of $20,000.44 through September 30, 2014 for a total amount of $75,680.72. ?

14. The amount of Defendant's recovery of costs and attorney's fees for which Defendant is entitled, shall be determined by this Court at a Hearing separate from the Trial, and a Supplemental Final Judgment shall be entered for such amount against Plaintiff and in favor of Defendant.

15. The Court does hereby retain jurisdiction of this case to enter Supplemental Final Judgments or Orders as this Court may deem appropriate.

DONE and ORDERED in chambers at Sanford, Seminole County, Florida, this 16th day of October, 2014.

Robert J. Pleus

~~Circuit~~ Judge
Senior

Copies furnished to:
John G. Pierce, Esquire, 800 N. Ferncreek Ave, Orlando, FL 32803
Ryan M. Sciortino, Esquire, 3815 S. Conway Road, Suite E, Orlando, FL 32812

Debbie Whitehead

Judicial Asst/Attorney

9314 7100 1170 0785 3612 79

Exhibit - 400

BROCK & SCOTT PLLC

4360 CHAMBLEE DUNWOODY ROAD
SUITE 310
ATLANTA, GA 30341
PHONE: 404-789-2661
FAX: 404-294-0919

December 30, 2014

**VIA CERTIFIED, RETURN RECEIPT REQUESTED**
**AND REGULAR MAIL**

**Janet Hill**
**543 Auburn**
**Atlanta, GA 30312**

| | | |
|---|---|---|
| **Re:** | **NOTICE OF FORECLOSURE SALE** | |
| | **Our File No:** | **14-29250** |
| | **Mortgagor(s):** | **Janet Hill** |
| | **Property Address:** | **543 Auburn Avenue Northeast, Atlanta, GA 30312** |
| | **County:** | **Fulton** |

Dear Sir(s) and/or Madam(s):

You previously received communication from our office where we notified you that the loan on the above referenced property was referred to this firm for handling. That letter also advised you of certain rights you could exercise within 30 days of your receipt of that letter, including your right to have the debt validated. Nothing in this letter will prevent you from exercising those rights as initially explained.

The entire amount of the outstanding balance of principal and interest owed on the loan and any other authorized charges are now due and payable. For additional information regarding the total amount due (aka "payoff amount"), please contact us immediately. Additionally, the terms of your note call for the addition of attorney's fees to the debt in case of collection by or through an attorney. Georgia law (O.C.G.A. Section 13-1-11) requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorneys' fees. After that time, the full attorney's fees allowed by Georgia law may be added to the debt.

This office has begun foreclosure proceedings on behalf of The Bank of New York Mellon fka the Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass Through Certificates, Series 2005-58. A copy of the Notice of Foreclosure Sale is enclosed. The sale will be conducted in accordance with the terms set forth in said Notice.

Please be advised that if the default is not cured and the property is sold at foreclosure to an outside investor (other than your lender), there may be excess proceeds from the sale or distribution to lienholders and/or the owner of record. If an outside investor contacts you after foreclosure advising that they have purchased your property at sale, please call our Excess Proceeds department between 45-60 days after the foreclosure sale to determine if any such funds exist.

If you have received a discharge in a Bankruptcy proceeding and this debt was not reaffirmed, this notice is not intended to indicate that you are personally liable for this debt or that we are attempting to collect a debt from you. In this instance, the information concerning the associated debt owed is for informational purposes only and should be disregarded for any purpose other than that of conducting a foreclosure and/or exercising in rem rights and obligations under the security instrument pursuant to applicable state and federal law.

If you are currently or have within the last twelve (12) months been in the military service please notify this office immediately. You may be entitled to some protections under the Servicemembers Civil Relief Act. When contacting this office as to your military service, you must provide us with positive proof as to your military status.

Please do not hesitate to contact us for any questions you may have.

Respectfully,

Brock & Scott, PLLC

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

# NOTICE OF FORECLOSURE SALE UNDER POWER

FULTON COUNTY, GEORGIA

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Under and by virtue of the Power of Sale contained in a Security Deed given by Janet Hill to Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, dated October 6, 2005, and recorded in Deed Book 41205, Page 241, Fulton County, Georgia Records, as last transferred to The Bank of New York Mellon fka the Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass Through Certificates, Series 2005-58 by assignment recorded on June 14, 2011 in Book 50135 Page 399 in the Office of the Clerk of Superior Court of Fulton County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of Four Hundred Sixty-Four Thousand and 0/100 dollars ($464,000.00), with interest thereon as set forth therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of Fulton County, Georgia, within the legal hours of sale on February 3, 2015, the following described property:

All that tract or parcel of land lying and being in Land Lot 46 of the 14th District of Fulton County, City of Atlanta, Georgia, and being more particularly described as follows:

Beginning at a point located at the intersection of the southerly side of the right of way of Auburn Avenue (55-foot right of way) and the easterly side of the right of way of Howell Street (30-foot right of way); thence running along the southerly side of said Auburn Avenue North 66 degrees 34 minutes 07 seconds East a distance of 46.00 feet to 1/2 inch rebar found; thence leaving the southerly side of the right of way of Auburn Avenue and running South 00 degrees 00 minutes 00 seconds East a distance of 111.50 feet to a point; thence running South 88 degrees 54 minutes 06 seconds West a distance of 40.50 feet to an 1/2 inch OT found on the easterly side of the right of way of said Howell Street; thence running along the easterly side of the right of way of said Howell Street North 01 degrees 02 minutes 42 seconds West a distance of 94.00 feet to the point of beginning

Said property containing 0.097 acres, as per survey prepared for Janet Hill, prepared by Richard E. McDaniel, Jr., Georgia Registered Land Surveyor No. 2734, dated September 15, 1999.

Said property being known as 543 Auburn Avenue, according to the present system of numbering houses in Fulton County. Georgia

The debt secured by said Security Deed has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in Security Deed and by law, including attorney's fees (notice of intent to collect attorney's fees having been given).

Your mortgage servicer can be contacted at (800) 771-0299 - Loss Mitigation Dept, or by writing to 5th Floor Merrick Park Plaza, 4425 Ponce De Leon Blvd, Coral Gables, Florida 33146, to discuss possible alternatives to avoid foreclosure.

Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed first set out above.

To the best knowledge and belief of the undersigned, the party in possession of the property is Janet Hill or tenant(s); and said property is more commonly known as **543 Auburn Avenue Northeast, Atlanta, GA 30312**.

The sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy

Code (2) final confirmation and audit of the status of the loan with the holder of the security deed and (3) any right of redemption or other lien not extinguished by foreclosure.

The Bank of New York Mellon fka the Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass Through Certificates, Series 2005-58 as Attorney in Fact for Janet Hill.

Brock & Scott, PLLC
4360 Chamblee Dunwoody Road
Suite 310
Atlanta, GA 30341
404-789-2661
B&S file no.: 14-29250

Exhibit 500

# DEBT VALIDATION NOTICE
## PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT 15 USC 1692G AND UNDER THE TRUTH IN LENDING ACT 15 USC 1641 et. seq.
## THIS IS NOT A PUBLIC COMMUNICATION

**Notice to Agent is Notice to Principle. Notice to Principle is Notice to Agent**

Applicable to all successors and assigns. Silence is Acquiescence/Agreement/Dishonor

*This is self-executing contract.*

Proof of service Delivered by Certified Mail No# 7014 1200 0001 1182 9872

Date: January 19, 2015

Brock & Scott, PLLC (LLC)
Attn: Registered CT Corporation
1201 Peachtree Street N.E.
Atlanta, GA 30361

Principal Place of Business in Georgia: 4360 Chamblee Dunwoody Rd., Suite 310, Atlanta, GA 30341

**Re:** File # 14-29250 Loan #: *******5239
**Subject Property: 543 Auburn Ave. N.E., Atlanta, Georgia 30312 Fulton County, GA**

To Whom It May Concern:

We are sending you our legal notice in response to your debt collection letter dated on December 29, 2014 entitled "Referral for Foreclosure" and your December 30, 2014, Notice of Intent to Foreclose. The face of your letter dated on the 29th of December stated the following,

**"THIS COMMUNICATIONS IS BEING MADE IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE."**

Therefore, you have admitted that your communications and our reply are for purposes of determining your actions in accordance with debt collection practices. ***You are legally bound to follow the applicable statutes which includes the Amended Mortgage Bill Notification Notice under the Truth-In-Lending Act 15 USC 1641 et seq.***

***and Debt Validation Notice under the Fair Debt Collection Practices Act 15 USC 1692 et seq., respectively.***

In summary, your December 29th, 2014 means the following to us:

A. The alleged amount of debt owed is about $668,660.14. However, the property is advertised for sale at $464,000.00, which is a value below the purported debt amount owed.

B. The current creditor or Note Holder is purportedly The Bank of New York Mellon fka The Bank of New York , as Trustee for the certificateholders of CWALT, Inc. Alternative Loan Trust 2005-58, Mortgage Pass through Certificates, Series 2005-58 ( herein after referred to as " The Loan Trust 2005-58"). Our understanding is that this entity is not a licensed organization in any state to conduct business under Georgia's trust laws pursuant to OCGA §53-12-2 (15).

C. You are attempting to foreclose on our property, in which the debt is a mortgage transaction with a consumer which was purportedly made around 2005 by an unlicensed lender. We have judicial facts to prove this to be accurate. (Example, Bank of America et al v. Linda Nash, #59-2011-CA-003489, Circuit Court 18th Judicial Circuit, Seminole County, FL (September 14, 2014)).

D. We deny the debt, the amount and that the alleged debt is secured or was an extension of credit made by The Loan Trust 2005-58.

E. Your law firm has given us the option to contest the validity of any part of the debt. Therefore, we contest that the debt is valid. In fact, we believe the debt is void or in the alternative voidable.

**F.** We request that your law firm should **provide us with the exact names, addresses, the states of incorporation with proof or registrations and other pertinent details for purposes of identifying the original Creditor and the affiliations with Current Creditor.**

Based on relevant facts and research made from our personal knowledge, we affirm that Your Company has omitted or failed to disclose material information regarding the above. We believe that both purported creditor and past Creditor were defunct or non-existent and engaged in unlawful practices. Yet you are engaged in a debt collection action of attempting to seize our property by a non-judicial foreclosure.

If our facts and presumptions are true, then we believe that there is no valid contractual right given to support your debt collection activities as valid. Furthermore, we believe that the debt, is not valid and/or at best our loan is unsecured.

Wherefore, we state for the record, our affirmative statements for you to **provide us facts to disprove the following statements and for you to provide true information requested, herein below:**

1. We made no loan with The Loan Trust 2005-58 in the amount indicated in your letter.

2. We consider that you are a debt collector trying to engage us to discuss an invalid debt or a debt that has been abandoned by a defunct or non-existent entity and created by fictitious and unlawful means.

3. We have never been given any confirmation or evidence that any transfer of our purported loan was made from our former original Mortgagee to The Loan Trust 2005-58 as required by federal law. **We also request that you investigate**. If such a transfer, sell or conveyance occurred, then please provide the following facts required under federal and state consumer protection statutes:

   a. The date that the alleged loan transaction became delinquent or outstanding.

   b. The date that the transfer, sell or conveyance was made with all evidence of supporting that it was made and belongs to Trustee or the underlying trust.

   c. The knowledge of who is the record keeper or custodian for the underlying Loan Trust 2005-58, their address, phone number, and the contact name of an officer or person with personal knowledge about the facts of such transfer of asset involving our loan account.

   d. The name and address, phone numbers and a contact person name of the underlying trust's Master Servicer and Sub Servicers who were and are currently involved with the management of the servicing of the alleged loan along with their unique NMLS license numbers.

   e. The date of registration of the trustee, Bank of New York Mellon, and the date and registration number authorizing the trust to conduct business in Georgia on in the name of the alleged The Loan Trust 2005-58.

   f. The current registration or certificate of authority for The Loan Trust 2005-58 to do business in any state, including Delaware, New York, Texas, Georgia or California.

   g. The knowledge of Loan Trust 2005-58 physical address, phone number, and the contact number of an officer or person with personal knowledge about the facts of such transfer of asset and our loan details. We believe that this information is required under the terms of Section 15 and 20 of our Security Deed.

   h. We hold fast to the Dodd –Frank 2010 Wall Street and Consumer Protection Act Reforms that you are required to inform us, as consumers, the details that we have requested.

So therefore, with respect to the above laws and our contract terms, we understand that you are required to provide us with these details. All questions are important and your answers should allow us to have clarity about the alleged debt, who we should negotiate

the terms with and hopefully we can resolve many outstanding issues. As further stated, we request to know the following:

4. Please inform us the other points needed to clarifying the following affiliations to the purported creditor:

   What is the loan trust's current tax identification number for reporting purposes under the Internal Revenue Code requirements for tax reporting purposes of investors, and interests credits assigned to the entity from our loan and other verifications required under a REMIC trust?

5. Additionally, your company may have made material misrepresentations or errors with respect our account number and if the purported amount of debt includes, attorney fees, late fees, and other additions, such as Lender Placed Insurance (LPI). Please address the fundamental questions related to your understanding of the debt account .

i. If there is LPI involved in the debt, then please inform us of the following:

ii. Who was the insurer?

iii. Who authorized the LPI payments and when?

iv. What are the terms and coverage amount of the LPI policy?

v. Did LPI cover the borrower and mortgagee under the policy?

vi. Why were we never given a copy of such policy, so that, we would know our rights under the policy?

6. **Does the securitized loan guarantee any amount of the borrower payments, in case of a payment default?**

In reference to all of the above, our position is that you have engaged in debt collection action without supporting the nature of the debt. Your action appears to be a premature attempt to foreclose without the present right to foreclose.

Since, you have initiated action by attempting to collect on a consumer debt, you have assumed liabilities for your actions. Wherefore, to enforce the contract, you, all parties of interests and affiliates are notified that this is a **Self Executing Contract, and you are liable for any breaches to the contract or under consumer protection statutes, accordingly**. Furthermore, by accepting this reply, you have agreed to the terms of our presentment and we expect for you to respond in all future communications in writing. Your compliance is mandatory by the applicable laws under the governing federal and state statutes with respect to your business practices.

You have our contact address as stated in this correspondence. Everything communicated **must be in writing**. We hope that you agree to make the right decision.

We understand that under TILA 15 USC Section 1641 et seq, you have thirty (30) business days to acknowledge and comply. We hope that we have not suffered any derogatory information reported to credit bureaus. Your compliance is expected in accordance to the terms of the contract and under the applicable laws.

Wherefore, govern yourself accordingly.

Executed on this 19th day of January, 2015.

Janet Hill
All Rights Reserved
543 Auburn Ave. N.E.,
Atlanta, Georgia 30312

Exhibit - 600

# Notice To CHANGE IN NOTE HOLDER REQUESTED

**Debt Validation Notice Under 15 USC §1692 (g), Regulation Z and Truth In Lending Act**
**Liability on Assignee under 15 USC §1641(g) and (f)**
**THIS IS NOT A PUBLIC COMMUNICATION**
**Notice to Agent is Notice to Principle. Notice to Principle is Notice to Agent**
Applicable to all successors and assigns. Silence is Acquiescence/Agreement/Dishonor
*This is a self-executing contract.*

Sent via Certified Mail and telecopier with proof of service to:

Date: January 20, 2015

**Bank of New York Mellon, fka, Bank of New York, As Trustee for**
for The Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2005-58, Mortgage Pass through Certificates , Series 2005-58
c/o Gerald Hassell, CEO
1 Wall Street
Manhattan, NY
New York, NY 10005

**Re: Notice of Errors in Debt Collection Letter Dispute Given to Loan Servicer And Notice to Verify Change in Note Holder**

Unknown Account and Unverified Account Number: Loan #: *******5239 Alleged Amount Owed: **$464,000.00 - $668.660.14**
**Subject Property: 543 Auburn Ave. N.E., Atlanta, Georgia 30312 Fulton County, GA**
Unknown Creditor: The Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2005-58, Mortgage Pass through Certificates Series 2005-58

**Dear To Whom it May Concern:**

We are presenting to Bank of New York Mellon with our final notice regarding your role as a Trustee for the above loan trust. We are sending you our legal notice in response to your attempt to collect on a debt and commence a foreclosure by letters directed by your company's third party affiliations. A Georgia law firm indicated that Bank of New York Mellon hired Brock & Scott, PLLC in their letters dated on December 29, 2014 entitled "Referral for Foreclosure" and on December 30, 2014, Notice of Intent to Foreclose. Apparently, you have directed the Brock & Scott PLLC law firm to send us those letters with the intent to advertise a foreclosure against our home. The letters expressly states:

**"THIS COMMUNICATIONS IS BEING MADE IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE."**

Therefore, upon belief, your communications and our reply are for purposes of determining your actions in accordance with debt collection practices, our mortgage contract and the Consumer Protection statutes above. You are legally bound to follow the applicable Consumer Protection statutes. The statutes includes the Amended Mortgage Bill Notification Notice under the Truth-In-Lending Act 15 USC 1641 et

seq. and Debt Validation Notice under the Fair Debt Collection Practices Act 15 USC 1692 et seq., respectively.

**Our notices or letters have gone largely unanswered by you and your affiliates.** Our records indicate that Gerald Hassell works in some executive capacity for Bank of New York Mellon.

We are sending this letter for specific clarifications, so that we may determine if the claim of ownership to consumer transactions and servicing rights were authorized by the Bank of New York Mellon, in its capacity as Trustee.

Whereas, **we seek to know if the loan trust remains in an active legal status, and if your duties continue under the Pooling and Servicing Agreement (PSA) and Prospectus for the underlying Mortgage Loan Trust, CWALT, Inc. Alternative Loan Trust 2005-58. In 2005, America's Wholesale Lender (Awl) allegedly originated our loans and thereafter assigned it to the underlying loan trust.**

Whereas, under the Truth-In-Lending Act (TILA) Section 1641 et. seq., we are entitled to make our inquiry to determine if the underlying alleged mortgage that once allegedly encumbered our Georgia property and purportedly your name authorizes a foreclosure proceeding.

Particularly of importance, we have never received a notice of change in ownership. Furthermore, we are also requesting for exact information regarding the legal and statutory standing of CWALT, Inc. Alternative Loan Trust 2005-58. **Specifically, your company is required to verify the following:**

1. We request for proof, by a certificate of authority or registration and/or license number from a State's Secretary of State and Securities Exchange Commission that the trust is currently licensed and is operating under statutory laws. We demand to affirmatively contact the Note Holder's registered agent for CWALT, Inc. Alternative Loan Trust 2005-58 as proof. Is the trust in good standing to conduct business?

2. On this subject of correct information, what is a direct phone number and current address for the above trust?

3. Other than Mr. Gerald Hassell, who may or should we contact within Bank of New York Mellon concerning this requested matter?

4. Please identity the Master Servicer and sub servicers whom we may contact about all of the servicing records related to our mortgage. Specifically, does the underlying trust have knowledge that America's Wholesale Lender was not licensed in 2005 or thereafter and therefore our loan transaction may be void?

5. See Attached September 2014 Florida Judge's Order and Opinion relevant to AWL.

6. Wherefore, the Assignment of Note and Mortgage by Mortgage Electronic Registration Systems, Inc. (" MERS") to the underlying trust might be of no value or legal effect if AWL was not properly licensed to make residential loans as an unlicensed or incorporated entity. Does Bank of New York contest the Florida judgment?

7. **We, the Mortgagor, have given you a formal Notice pursuant under Section 15 of the Security Deed. We expect Bank of New York Mellon to investigate and act immediately to avoid litigation by doing the following:**

   A. Provide written assurances that the Law Firm shall withdraw the foreclose sale by January 28th, 2015.

   B. Correct and remove any derogatory Credit Bureau records made by your trust's servicers with respect to the alleged indebtedness.

   C. Make provisions for recoupment of all previous payments made.

   D. Release any and all unlawful claims to the property.

   Please respond with a rebuttal to any of the above line items as being non-factual or untrue. Otherwise, if we do not affirmatively receive a response by January 28th, 2015, then we will assume that BANK of New York Mellon has no interest in the underlying trust or loan and we may proceed accordingly.

**We restate our demand, so that, everyone is clear to my position below:**
Please provide us with THE ABOVE ANSWERS to verify if Bayview Loan Servicing or Brock & Scott, PLLC activities are affiliates on behalf of the underlying loan trust. There may be privacy issues under the Gramm-Leach Bliley Act (GLBA) that have been violated. Please indicate if the affiliated business entities are involved in sharing our home and mortgage private information.

Your silence or inactions and later claims of interests may be a violation under the Federal Trade Commission Interstate Commerce laws and the CFPB authority to review. Additionally, you may have liabilities under Georgia's Codes and the Dodd Frank 2010 Wall Street Reforms and Consumer Protections Act where you have agreed to up hold in good faith.

You are reminded that this is a **Self Executing Contract**. Thereby, you have agreed to the terms of our presentment and for you to respond in your communications in writing as required under the Uniform Covenant Section 15 of the Security Instrument.

We understand that under Truth-In-Lending Act Section 1641 (g) and (f) provides you with 30 business days to respond. We are approaching another 30 business days without a resolution.

Please govern yourself accordingly.

Executed on or about this 20th day of January, 2015

Janet Hill, Consumer

**Certificate of Service**

I, the undersigned, certify that I have delivered the foregoing document by first class U.S. mail to the following persons to witness the communications as per the right of Giving of Notice to the Lender/Note Holder or to their agents under terms within our Promissory Note and Security Deed to the addresses below:

Richard Cordray, U.S. Director,
Consumer Financial Protection Bureau,
P.O. Box 4503
Iowa City, Iowa 52244 Certified Mail No. 7014 1200 0001 2037 1722
Case No. ________________

Executed on or about this 20th day of January, 2015

______________________________

Janet Hill
All Rights Reserved
543 Auburn Ave. N.E.,
Atlanta, Georgia 30312
Without Recourse

Exhibit - 65c

# QUALIFIED WRITTEN REQUEST

**PURSUANT TO THE REAL ESTATE SETTLEMENT PROCEDURES ACT SECTION 2605 (6) (e) and (k)**
**12 USC 2605 (6) (e) and (k)**

**THIS IS NOT A PUBLIC COMMUNICATION**

**Notice to Agent is Notice to Principle. Notice to Principle is Notice to Agent**
Applicable to all successors and assigns. Silence is Acquiescence/Agreement/Dishonor
*This is self-executing contract.*

Proof of service Delivered by Certified Mail No# 7014 1200 0001 2037 7263
7014 1200 0001 2037 7254

Date: January 22, 2015

Bayview Loan Servicing, LLC (7263)
Attn: Customer Support
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables FL 33146

**Registered Agent:** Corporate Service Co. (7254)
40 Technology Parkway South, Suite #300
Norcross, GA 30092

**Re:** File # 14-29250 Loan #: *******5239
**Subject Property: 543 Auburn Ave. N.E., Atlanta, Georgia 30312 Fulton County, GA**

To Whom It May Concern:

We are sending you our legal notice in response to your attempt to collect on a debt and commence a foreclosure by letters directed by your company dated on December 29, 2014 entitled "Referral for Foreclosure" and your December 30, 2014, Notice of Intent to Foreclose. Apparently, you have directed Brock & Scott PLLC law firm to send us a letter dated on the 29th of December, 2014 without fully disclosing your affiliation. However, the letters expressly states:

**"THIS COMMUNICATIONS IS BEING MADE IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE."**

Therefore, upon belief, your communications and our reply are for purposes of determining your actions in accordance with debt collection practices and the RESPA statute above. You are legally bound to follow the applicable Consumer Protection statutes which includes the Amended Mortgage Bill Notification Notice under the Truth-In-Lending Act 15 USC 1641 et seq. and Debt Validation Notice under the Fair Debt Collection Practices Act 15 USC 1692 et seq., respectively.

In summary, your letter, directed through the Law Firm of Brock & Scott dated on December 29th, 2014, means the following to us:

A. The amount of debt owed is about $668.660.14. However, the property is being advertised for sale at $464,000.00, which is a value below the purported debt amount owed.

B. The current creditor or Note Holder is purportedly The Bank of New York Mellon fka The Bank of New York, as Trustee for the certificateholders of CWALT, Inc. Alternative Loan Trust 2005-58, Mortgage Pass through Certificates , Series 2005-58 ( herein after referred to as " The Loan Trust 2005-58"). It is our belief that this entity is not a licensed organization in any state to conduct business under Georgia's trust laws pursuant to OCGA §53-12-2 (15).

C. You are attempting to foreclose on our property, in which the alleged debt is a mortgage transaction with a consumer which was purportedly made around 2005 by an unlicensed lender America's Wholesale Lender.

D. We deny that the alleged debt is secured or was an extension of credit made by The Loan Trust 2005-58. We believe that your records are erroneous and you refuse to correct these facts.

E. Your law firm has given us the option to contest the validity of any part of the debt. Therefore, we contest that the debt is valid and give notice that the account is erroneous, as well. In fact, we believe the debt is void or in the alternative voidable.

F. **We request that your company provide us with an investigation of the exact names, addresses, the states of incorporation with proof or registrations and other pertinent details for purposes of identifying the original creditor and the affiliations with current creditor. The Applicable laws should comply with RESPA and TILA, accordingly.**

Based upon relevant facts and research made from our personal knowledge, we affirm that Your Company has omitted or failed to disclose material information regarding the above. We believe that both purported creditor and past creditor were defunct or non-existent. Yet you are engaged in a debt collection action of attempting to seize our property by a non-judicial foreclosure. Georgia Law Requires that non-judicial sales are to be fairly exercised and strictly complied with OCGA §23-2-114. We believe at a minimum, that you are engaged in bad faith business practices. Whereas, you may have purchased the debt, as a debt collector, but then you are trying to mislead us to believe that you are servicing for a purported secured creditor.

If our research and presumptions are true, then we believe that your actions are misleading and we have facts that there is no valid contractual right given to support your debt collection activities. Nevertheless, we believe that our mortgage should not be a secured transaction for seizing our home. Furthermore, we believe that the debt, is not valid or at best our loan is unsecured.

Wherefore, we state for the record, our affirmative statements for you to provide us facts to disprove the following statements and for you to provide true information by affirmation or denial of our requests herein, below:

1. We made no loan with The Loan Trust 2005-58 in the amount indicated in your letter.

2. We consider that you are a debt collector trying to engage us to discuss an invalid debt or a debt that has been abandoned by a defunct or non-existent entity.

3. **We have never been given any confirmation or evidence that any transfer of our purported loan was made from the alleged former original mortgage company to The Loan Trust 2005-58. If such a transfer, sell or conveyance occurred as required by federal law, please provide the following facts required under federal and state consumer protection statutes:**

    a. The date that the alleged loan transaction took place, became delinquent and/or outstanding.

    b. The date that the transfer, sell or conveyance was made with all evidence of supporting that it was made and belongs to Trustee or the underlying trust.

    c. The knowledge of who is the record keeper or custodian for the underlying Loan Trust 2005-58, their address, phone number, and the contact name of an officer or person with personal knowledge about the facts of such transfer of the asset involving the alleged loan account.

    d. The name and address, phone numbers and a contact person name of the underlying trust's Master Servicer and Sub Servicers who were and are currently involved with the management of the servicing of the alleged loan along with their unique NMLS license numbers.

    e. The date of registration of the trustee, Bank of New York Mellon and the date and registration number authorizing the trust to conduct business in Georgia on in the name of the alleged The Loan Trust 2005-58.

    f. The current registration or certificate of authority for The Loan Trust 2005-58 to do business in any state, including Delaware, New York, Texas, Georgia or California.

    g. The knowledge of Loan Trust 2005-58 physical address, phone number, and the contact number of an officer or person with personal knowledge about the facts of such transfer of asset and the alleged loan details. We believe that this information is required under the terms of Section 15 and 20 of our Security Deed.

    h. We hold fast to the Dodd –Frank 2010 Wall Street and Consumer Protection Act Reforms that you are required to inform us, as consumers, the details that we have requested.

So therefore, with respect to the above laws and our contract terms, we believe that you are required to provide us with these details. All questions are important and your answers should allow us to have complete clarity and detailed disclosure regarding the alleged debt, who we should negotiate the terms. Hopefully, we can resolve the various outstanding issues. **As further stated, we request to know the following:**

4. Please inform us the other points needed to clarifying the following affiliations to the purported creditor:

   What is the loan trust's tax identification number for reporting purposes under the Internal Revenue Code requirements for tax reporting purposes of investors, and interest credits assigned to the entity from our alleged loan and other verifications required under a REMIC trust?

5. Additionally, your company may have made material misrepresentations or errors with respect to our account number(s) and whether the purported amount of debt includes, attorney fees, late fees, and other additions, adjustments such as Lender Placed Insurance (LPI). Please address the fundamental questions related to your understanding of the alleged debt account .

i. It there is LPI involved in the debt, then please inform us of the following:

ii. Who was the insurer?

iii. Who authorized the LPI payments and when?

iv. What are the terms and coverage amount of the LPI policy?

v. Did LPI cover the borrower and mortgagee under the policy?

vi. Why were we never given a copy of such policy, so that, we would know our rights under the policy?

6. **Does the securitized loan trust guarantee any amount of the borrower payments, in case of payment default?**

7. **What is the name of the company/beneficiary and the amount paid by the mortgage insurance as stated under the terms of the PSA (Pooling Service Agreement)?**

In reference to all of the above, our position is that you have engaged in debt collection action without supporting the nature of the debt. Your action appears to be a premature attempt to foreclose without the present right to foreclose.

Since, you have initiated action by attempting to collect on a consumer debt, you have assumed liabilities for your actions. Wherefore, to enforce the contract, you, all parties of interests and affiliates are notified that this is a **Self Executing Contract, and**

**you are liable for any breaches to the contract or under consumer protection statutes, accordingly**.

Furthermore, by accepting this reply, you have agreed to the terms of our presentment and we expect for you to respond in all future communications in writing. Your compliance is mandatory by the applicable laws under the governing federal and state statutes with respect to your business practices.

You have our contact address as stated in this correspondence. Everything communicated **must be in writing**. We hope that you agree to make the right decision. We have only one interest and that is to protect our God Given Assets, our name, our family and our rights.

We understand that under TILA 15 USC Section 1641 et seq, you have thirty (30) business days to acknowledge and comply. Additionally, we hope that we have not suffered any derogatory information reported to credit bureaus. **We request immediate attention to complete an investigation, respond in writing and resolve all issues as stated above.** Your compliance is expected in accordance to the terms of the contract and under the applicable laws.

We understand that under RESPA Complaint Resolution 12 USC 2605 Section 6, you have five (5) business days to acknowledge and an initial response within 20 days or less. Thereafter, you are allowed 60 business days to resolve. You must suspend any collection activities until within the 60 business days and do not report any derogatory information to credit bureaus. Other notices, may be applicable under the Truth-In-Lending Act, may require your compliance, too.

Wherefore, govern yourself accordingly.

Executed on this 22nd day of January, 2015.

Janet Hill
All Rights Reserved
543 Auburn Ave. N.E.,
Atlanta, Georgia 30312

## CERTIFICATE OF SERVICE

I, the undersigned, HEREBY CERTIFY that a true and correct copy of the above reply and the foregoing attachment has been furnished by U.S. Mail to:

Consumer Financial Protection Bureau

Enforcement Division

P.O. Box 4503

Iowa City, Iowa 52244

Case No. #150122-000773

Submitted this 22nd day of January, 2015

Janet Hill
All Rights Reserved
543 Auburn Ave. N.E.,
Atlanta, Georgia 30312

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP;

CASE NO. 59-2011-CA-004389
DIVISION: 14-K

Plaintiff,

COPY

vs.

LINDA A. NASH, et al.,

Defendants.

_______________________________/

**FINAL JUDGMENT**

THIS ACTION came on for Trial on September 15, 2014. All parties appeared and announced to the Court that they were ready for Trial. Plaintiff presented its case in full. After Plaintiff completed presentation of its case, and Defendant completed cross examination of Plaintiff's sole witness who was Plaintiff's representative, Chad Anderson, the Court announced that it was prepared to enter a Final Judgment based upon the evidence presented by Plaintiff, consisting of the following: a). Exhibit 1- Note, b). Exhibit 2- Mortgage, c). Exhibit 3- Notice of Intent to Accelerate, and d). Exhibit 4- Payment History, and Defendants cross examination and presentation of its Exhibit 1, the Assignment of Mortgage, without the necessity of Defendant presenting its witness and testimony,

The Courts finds as follows:

1. The Mortgage dated May 24, 2005 was executed by the Borrower, Linda A. Nash, payable to the alleged Lender, America's Wholesale Lender, which was recited to be a New York Corporation. The Mortgage recited that: "the Note states that Borrower owes Lender $58,500.00.

2. The Note was in the amount of $58,500.00, reciting that the alleged Lender "is America's Wholesale Lender".

3. The Note bears an endorsement –in-blank on page 3 thereof as follows: "pay to the order of (____________) without recourse" and underneath that statement, the Note purported to be endorsed by "Countrywide Home Loans, Inc., a New York Corporation doing business as America's Wholesale Lender."

4. The Plaintiff's sole witness testified that the Assignment of Mortgage presented as

Defendant's documentary evidence at the Trial, a copy of which was attached to Plaintiff's Complaint, was the only document he was aware of which purported to transfer any interest in the Mortgage, or the Note, except for the blank endorsement on page 3 of the Note, as set forth above.

5. Plaintiff's witness acknowledged that he knew of no other documents purporting to transfer any interest in the Note, or the Mortgage, which were in existence relative to any transfer of ownership interest in the Note, or the Mortgage, which Plaintiff sought to foreclose in this action.

6. On cross examination, Plaintiff's witness confirmed that he knew of no evidence of transfer of the ownership interest in the Note, other than the blank endorsement on page 3 thereof, signed on behalf of Countrywide Home Loans, Inc., DBA America's Wholesale Lender.

7. Plaintiff's witness testified that he was aware that America's Wholesale Lender was not incorporated in the year 2005 when the Note and Mortgage were signed, and that no such corporation was subsequently formed by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents. Plaintiff's witness also confirmed that he was aware that America's Wholesale Lender did not ever have a Lender's license in the State of Florida and did not have authority to do business in Florida, as a New York Corporation, under Florida Statute 607.1506.

8. Plaintiff's witness also testified that he has no knowledge of the existence of any document transferring any interest in the subject Mortgage Note or Mortgage from the Lender to Fannie Mae, who is alleged in the Plaintiff's Complaint to have been the owner of the Note at the time the Mortgage Foreclosure Complaint was filed.

9. The Court finds that:

a.) America's Wholesale Lender, a New York Corporation, the "Lender", specifically named in the mortgage, did not file this action, did not appear at Trial, and did not Assign any of the interest in the mortgage.

b.) The Note and Mortgage are void because the alleged Lender, America's Wholesale Lender, stated to be a New York Corporation, was not in fact incorporated in the year 2005 or subsequently, at any time, by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents.

c.) America's Wholesale Lender, stated to be a corporation under the laws of New York, the alleged Lender in this case, was not licensed as a mortgage lender in Florida in the year 2005, or thereafter, and the alleged mortgage loan is therefore, invalid and void.

d.) America's Wholesale Lender, stated to be a New York Corporation, did not have authority to do business in Florida under Florida Statute 607.1506 and the alleged mortgage loan is therefore invalid and void.

e.) Plaintiff and its predecessors in interest had no right to receive payment on the mortgage loan because the loan was invalid and therefore void because the corporate mortgagee named therein, was non-existent, and no valid mortgage loan was ever held by Plaintiff or its predecessors in interest.

f.) The alleged Assignment of Mortgage which purported to transfer interest in this mortgage to BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Servicing, LP, as assignee, was invalid because Mortgage Electronic Registrations Systems, Inc. (MERS), as nominee for America's Wholesale Lender had no authority to assign the ownership interest of said mortgage, because MERS was not the owner of the subject mortgage and was only a nominee for America's Wholesale Lender, an alleged New York Corporation which was a non-existent Corporation. Said purported assignment was without authority, and therefore invalid.

g.) Plaintiff's witness had no knowledge of who or what entity might have instructed MERS as nominee, to attempt to assign or transfer any interest in said mortgage, which in any event would have been invalid because that entity (MERS) had no ownership interest in the mortgage and was merely named as a nominee for the non-existent corporate mortgagee..

10. Based upon the foregoing, the Plaintiff, Bank of America, NA, has no standing to bring this action. The Plaintiff has no legal right to attempt to claim ownership of the subject Note and Mortgage, or any right as servicer, for some other unknown entity, and is without any legal basis to attempt to foreclose the subject Mortgage, or to collect on the Mortgage Note, because America's Wholesale Lender, a New York Corporation, did not exist in 2005, and was never formed as a Corporation by Plaintiff or its predecessors in interest. The collection of mortgage payments by the Plaintiff and its predecessors in interest, was therefore illegal and they were without any legal right to receive and use or disburse the funds therefrom on behalf of any owner of the Note and Mortgage, or any other party.

11. Defendant is therefore entitled to recover from Plaintiff, all funds reflected on Plaintiff's Exhibit 4 which Plaintiff's witness testified reflected the payment history of monies paid by Defendant to Plaintiff or its predecessors in interest, because the subject note and mortgage were invalid because the alleged mortgage lender did not exist and did not have the legal right to receive and retain or disburse said funds.

12. Defendant is also entitled to recover from Plaintiff, all costs and attorney's fees incurred by Defendant in this action pursuant to the terms and conditions of the subject Mortgage Note and Mortgage upon which Plaintiff based this action, and pursuant to the terms of Florida Statute 57.105, as the prevailing party.

58,500

13. The Court finds that the principal and interest paid by Defendant to Plaintiff, or its predecessors in interest, in the amount of $55,680.28, as shown on Plaintiff's Exhibit 4, presented at Trial, is recoverable by Defendant from Plaintiff and Defendant is entitled to Judgment against Plaintiff in that amount of $55,680.28, plus interest on the amount of each respective payment at the statutory rate for each year in question from the year 2005 through the date of Defendant's last payment in October, 2010, in the amount of $8,206.87 and continuing to the date of this Final Judgment. Defendant has presented to this Court, a computation of the amount of said payments and the interest due thereon from the date of each respective payment to September 30, 2014 in the aggregate amount of $20,000.44 with per diem at the rate of $8.86 per day thereafter. Judgment is therefore entered for Defendant and against Plaintiff in the amount of $55,680.28, plus interest in the amount of $20,000.44 through September 30, 2014 for a total amount of $75,680.72. ?

14. The amount of Defendant's recovery of costs and attorney's fees for which Defendant is entitled, shall be determined by this Court at a Hearing separate from the Trial, and a Supplemental Final Judgment shall be entered for such amount against Plaintiff and in favor of Defendant.

15. The Court does hereby retain jurisdiction of this case to enter Supplemental Final Judgments or Orders as this Court may deem appropriate.

DONE and ORDERED in chambers at Sanford, Seminole County, Florida, this 16th day of October, 2014.

Robert J. Pleus

~~Circuit~~ Judge
Senior

Copies furnished to:
John G. Pierce, Esquire, 800 N. Ferncreek Ave, Orlando, FL 32803
Ryan M. Sciortino, Esquire, 3815 S. Conway Road, Suite E, Orlando, FL 32812

Debbie Whitehead

Judicial Asst/~~Attorney~~

700 - 750

Exhibit 700-750

# Case number: 150122-000773

Back

## Status

Company responded
Bayview Loan Servicing LLC said:
Explanation of closure

Closing claim as this is not a Bayview Loan Servicing, LLC customer. Thank you! (CMP)

Dispute

Response

1/23/15 - Crossed referenced customer information, unable to ID.

## What happened

Describe what happened so we can understand the issue...

Bayview has hired a law firm to collect a debt and proceed with aforeclosure that is not valid. The law firm does not provide the name of the original lender, the referenced lender does not exist, the amount is not valid. I made no loan with Bayview or any of the alleged creditors. There is no legal transfer of any loans that provide a legal chain of title transfer to Bayview or any of its assessors, assigns or representatives.

The judicial ruling related to the màtter has been issued.

This is about a(n) Debt collection: Mortgage
Which of these best describes your issue? Taking/threatening an illegal action: Seized or attempted to seize property

## Desired resolution

What do you think would be a fair resolution to your issue?

Return all monies collected for this unlawful action, with interest and legal fees. Correct credit file. Release all claims to property.

# Consumer information

## Contact information

**Mailing address**
Ms Janet Hill
543 Auburn Address
Atlanta GA 30312
United States
Phone 404-861-6036
Last four digits of SSN
3758

Exhibit - 800

BROCK & SCOTT PLLC

4360 CHAMBLEE DUNWOODY ROAD
SUITE 310
ATLANTA, GA 30341
PHONE: 404-789-2661
FAX: 404-294-0919

January 26, 2015

Janet Hill
543 Auburn Avenue Northeast
Atlanta, GA 30312

**Re: Cancellation of Sale Notice**

| | |
|---|---|
| **Our File No:** | **14-29250** |
| **Mortgagor(s):** | **Janet Hill** |
| **Original Mortgagee:** | **Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender** |
| **Property Address:** | **543 Auburn Avenue Northeast, Atlanta, GA 30312** |
| **County:** | **Fulton** |

Dear Sir(s) and/or Madam(s):

The February 3, 2015 sale as been cancelled.

Respectfully,

Brock & Scott, PLLC

Exhibit - 900

BROCK
&SCOTT
PLLC

4360 CHAMBLEE DUNWOODY ROAD
SUITE 310
ATLANTA, GA 30341
PHONE: 404-789-2661
FAX: 404-294-0919

April 1, 2015

**VIA CERTIFIED, RETURN RECEIPT REQUESTED
AND REGULAR MAIL**

**Janet Hill
543 Auburn Avenue
Atlanta, GA 30312**

| | | |
|---|---|---|
| **Re:** | **NOTICE OF FORECLOSURE SALE** | |
| | **Our File No:** | **14-29250** |
| | **Mortgagor(s):** | **Janet Hill** |
| | **Property Address:** | **543 Auburn Avenue Northeast, Atlanta, GA 30312** |
| | **County:** | **Fulton** |

Dear Sir(s) and/or Madam(s):

You previously received communication from our office where we notified you that the loan on the above referenced property was referred to this firm for handling. That letter also advised you of certain rights you could exercise within 30 days of your receipt of that letter, including your right to have the debt validated. Nothing in this letter will prevent you from exercising those rights as initially explained.

The entire amount of the outstanding balance of principal and interest owed on the loan and any other authorized charges are now due and payable. For additional information regarding the total amount due (aka "payoff amount"), please contact us immediately. Additionally, the terms of your note call for the addition of attorney's fees to the debt in case of collection by or through an attorney. Georgia law (O.C.G.A. Section 13-1-11) requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorneys' fees. After that time, the full attorney's fees allowed by Georgia law may be added to the debt.

This office has begun foreclosure proceedings on behalf of The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58. A copy of the Notice of Foreclosure Sale is enclosed. The sale will be conducted in accordance with the terms set forth in said Notice.

Please be advised that if the default is not cured and the property is sold at foreclosure to an outside investor (other than your lender), there may be excess proceeds from the sale or distribution to lienholders and/or the owner of record. If an outside investor contacts you after foreclosure advising that they have purchased your property at sale, please call our Excess Proceeds department between 45-60 days after the foreclosure sale to determine if any such funds exist.

If you have received a discharge in a Bankruptcy proceeding and this debt was not reaffirmed, this notice is not intended to indicate that you are personally liable for this debt or that we are attempting to collect a debt from you. In this instance, the information concerning the associated debt owed is for informational purposes only and should be disregarded for any purpose other than that of conducting a foreclosure and/or exercising in rem rights and obligations under the security instrument pursuant to applicable state and federal law.

If you are currently or have within the last twelve (12) months been in the military service please notify this office immediately. You may be entitled to some protections under the Servicemembers Civil Relief Act. When contacting this office as to your military service, you must provide us with positive proof as to your military status.

Please do not hesitate to contact us for any questions you may have.

Respectfully,

Brock & Scott, PLLC

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

# NOTICE OF FORECLOSURE SALE UNDER POWER

FULTON COUNTY, GEORGIA

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Under and by virtue of the Power of Sale contained in a Security Deed given by Janet Hill to Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, dated October 6, 2005, and recorded in Deed Book 41205, Page 241, Fulton County, Georgia Records, as last transferred to The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 by assignment recorded on June 14, 2011 in Book 50135 Page 399 in the Office of the Clerk of Superior Court of Fulton County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of Four Hundred Sixty-Four Thousand and 0/100 dollars ($464,000.00), with interest thereon as set forth therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of Fulton County, Georgia, within the legal hours of sale on May 5, 2015, the following described property:

All that tract or parcel of land lying and being in Land Lot 46 of the 14th District of Fulton County, City of Atlanta, Georgia, and being more particularly described as follows:

Beginning at a point located at the intersection of the southerly side of the right of way of Auburn Avenue (55-foot right of way) and the easterly side of the right of way of Howell Street (30-foot right of way); thence running along the southerly side of said Auburn Avenue North 66 degrees 34 minutes 07 seconds East a distance of 46.00 feet to 1/2 inch rebar found; thence leaving the southerly side of the right of way of Auburn Avenue and running South 00 degrees 00 minutes 00 seconds East a distance of 111.50 feet to a point; thence running South 88 degrees 54 minutes 06 seconds West a distance of 40.50 feet to an 1/2 inch OT found on the easterly side of the right of way of said Howell Street; thence running along the easterly side of the right of way of said Howell Street North 01 degrees 02 minutes 42 seconds West a distance of 94.00 feet to the point of beginning

Said property containing 0.097 acres, as per survey prepared for Janet Hill, prepared by Richard E. McDaniel, Jr., Georgia Registered Land Surveyor No. 2734, dated September 15, 1999.

Said property being known as 543 Auburn Avenue, according to the present system of numbering houses in Fulton County. Georgia

The debt secured by said Security Deed has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in Security Deed and by law, including attorney's fees (notice of intent to collect attorney's fees having been given).

Your mortgage servicer can be contacted at (800) 771-0299 - Loss Mitigation Dept, or by writing to 5th Floor Merrick Park Plaza, 4425 Ponce De Leon Blvd, Coral Gables, Florida 33146, to discuss possible alternatives to avoid foreclosure.

Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed first set out above.

To the best knowledge and belief of the undersigned, the party in possession of the property is Janet Hill or tenant(s); and said property is more commonly known as **543 Auburn Avenue Northeast, Atlanta, GA 30312**.

The sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code (2) final confirmation and audit of the status of the loan with the holder of the security deed and (3) any right of redemption or other lien not extinguished by foreclosure.

The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 as Attorney in Fact for Janet Hill.

Brock & Scott, PLLC
4360 Chamblee Dunwoody Road
Suite 310
Atlanta, GA 30341
404-789-2661
B&S file no.: 14-29250

1000

Exhibit - 1000

# DEBT VALIDATION NOTICE
# PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT 15 USC 1692G AND UNDER THE TRUTH IN LENDING ACT 15 USC 1641 et. seq.
# THIS IS NOT A PUBLIC COMMUNICATION

**Notice to Agent is Notice to Principle. Notice to Principle is Notice to Agent**

Applicable to all successors and assigns. Silence is Acquiescence/Agreement/Dishonor

*This is self-executing contract.*

Proof of service Delivered by Certified Mail No# 7014 2120 0003 5440 9947

Date: ~~January~~ April 20, 2015

Brock & Scott, PLLC (LLC)
Attn: Registered CT Corporation
1201 Peachtree Street N.E.
Atlanta, GA 30361

Principal Place of Business in Georgia: 4360 Chamblee Dunwoody Rd., Suite 310, Atlanta, GA 30341

Re: File # 14-29250 Loan #: *******5239
**Subject Property: 543 Auburn Ave. N.E., Atlanta, Georgia 30312 Fulton County, GA**

To Whom It May Concern:

We are sending you our legal notice in response to your debt collection letter dated on April 1, 2015 Notice of Intent to Foreclose. Your letter states the following,

**"THIS COMMUNICATIONS IS BEING MADE IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE."**

Therefore, you have admitted that your communications and our reply are for purposes of determining your actions in accordance with debt collection practices. ***You are legally bound to follow the applicable statutes which includes the Amended Mortgage Bill Notification Notice under the Truth-In-Lending Act 15 USC 1641 et seq. and Debt Validation Notice under the Fair Debt Collection Practices Act 15 USC 1692 et seq., respectively.***

Wherefore, we state for the record, our affirmative statements for you to **provide us facts to disprove the following statements and for you to provide true information requested, herein below:**

1. We made no loan with The Loan Trust 2005-58 in the amount indicated in your letter.

2. We consider that you are a debt collector trying to engage us to discuss an invalid debt or a debt that has been abandoned by a defunct or non-existent entity and created by fictitious and unlawful means.

3. **Your claim for authority to act as Power of Attorney does not exist.**

4. We have never been given any confirmation or evidence that any transfer of our purported loan was made from our former original Mortgagee to The Loan Trust 2005-58 as required by federal law. **We also request that you investigate.** If such a transfer, sell or conveyance occurred, then please provide the following facts required under federal and state consumer protection statutes:

   a. The date that the alleged loan transaction became delinquent or outstanding.

   b. The date that the transfer, sell or conveyance was made with all evidence of supporting that it was made and belongs to Trustee or the underlying trust.

   c. The knowledge of who is the record keeper or custodian for the underlying Loan Trust 2005-58, their address, phone number, and the contact name of an officer or person with personal knowledge about the facts of such transfer of asset involving our loan account.

   d. The name and address, phone numbers and a contact person name of the underlying trust's Master Servicer and Sub Servicers who were and are currently involved with the management of the servicing of the alleged loan along with their unique NMLS license numbers.

   e. The date of registration of the trustee, Bank of New York Mellon, and the date and registration number authorizing the trust to conduct business in Georgia on in the name of the alleged The Loan Trust 2005-58.

   f. The current registration or certificate of authority for The Loan Trust 2005-58 to do business in any state, including Delaware, New York, Texas, Georgia or California.

   g. The knowledge of Loan Trust 2005-58 physical address, phone number, and the contact number of an officer or person with personal knowledge about the facts of such transfer of asset and our loan details. We believe that this information is required under the terms of Section 15 and 20 of our Security Deed.

h. We hold fast to the Dodd –Frank 2010 Wall Street and Consumer Protection Act Reforms that you are required to inform us, as consumers, the details that we have requested.

i. The current status of the trust.

j. The annual tax filing status of the trust for years 2005 – 2014

So therefore, with respect to the above laws and our contract terms, we understand that you are required to provide us with these details. All questions are important and your answers should allow us to have clarity about the alleged debt, who we should negotiate the terms with and hopefully we can resolve many outstanding issues. As further stated, we request to know the following:

5. Please inform us the other points needed to clarifying the following affiliations to the purported creditor:

   What is the loan trust's current tax identification number for reporting purposes under the Internal Revenue Code requirements for tax reporting purposes of investors, and interests credits assigned to the entity from our loan and other verifications required under a REMIC trust?

6. Additionally, your company may have made material misrepresentations or errors with respect our account number and if the purported amount of debt includes, attorney fees, late fees, and other additions, such as Lender Placed Insurance (LPI). Please address the fundamental questions related to your understanding of the debt account .

i. If there is LPI involved in the debt, then please inform us of the following:

ii. Who was the insurer?

iii. Who authorized the LPI payments and when?

iv. What are the terms and coverage amount of the LPI policy?

v. Did LPI cover the borrower and mortgagee under the policy?

vi. Why were we never given a copy of such policy, so that, we would know our rights under the policy?

7. **Does the securitized loan guarantee any amount of the borrower payments, in case of a payment default?**

8. **Written confirmation that provides authorization to send mail to an alternate or additional address.**

In reference to all of the above, our position is that you have engaged in debt collection action without supporting the nature of the debt. Your action appears to be

a premature attempt to foreclose without the present right to foreclose.

Since, you have initiated action by attempting to collect on a consumer debt, you have assumed liabilities for your actions. Wherefore, to enforce the contract, you, all parties of interests and affiliates are notified that this is a **Self Executing Contract, and you are liable for any breaches to the contract or under consumer protection statutes, accordingly**. Furthermore, by accepting this reply, you have agreed to the terms of our presentment and we expect for you to respond in all future communications in writing. Your compliance is mandatory by the applicable laws under the governing federal and state statutes with respect to your business practices.

You have our contact address as stated in this correspondence. Everything communicated **must be in writing**. We hope that you agree to make the right decision. We have only one interest and that is to protect our God Given Assets, our name, our family and our rights.

We understand that under TILA 15 USC Section 1641 et seq, you have thirty (30) business days to acknowledge and comply. We hope that we have not suffered any derogatory information reported to credit bureaus. Your compliance is expected in accordance to the terms of the contract and under the applicable laws.

Wherefore, govern yourself accordingly.

Executed on this 20th day of April, 2015.

Janet Hill
All Rights Reserved
543 Auburn Ave. N.E.
Atlanta, Georgia 30312

## CERTIFICATE OF SERVICE

I, the undersigned, HEREBY CERTIFY that a true and correct copy of the above reply and the foregoing attachment has been furnished by U.S. Mail to:

Consumer Financial Protection Bureau

Enforcement Division

P.O. Box 4503

Iowa City, Iowa 52244

Case No.# 150122-000773

Submitted this day 20th day of ~~January~~ April, 2015

Janet Hill
All Rights Reserved
543 Auburn Ave. N.E.,
Atlanta, Georgia 30312

Exhibit-11 66

JANET HILL | Report number 0656-78

# rint your report

ow is all the information currently in your credit report. The payment history guide and common questions will help explain your cre
page or write down your report number for future access. To return to your report in the future, log on to experian.com/help and se
sputes" and then follow the steps.

## 855 246 9409

ntact us by phone - Monday through Friday, 9 a.m. to 5 p.m. in your time zone.

## ldress

AC
). Box 9701 Allen, TX 75013

**Any pending disputes w**

## Personal information

| Name | Name identification number |
|---|---|
| JANET HILL | [redacted] |
| JANET K HILL | [redacted] |
| JANET KAREN HILL | [redacted] |
| HILL JANET | [redacted] |

## Potentially negative items

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| BAYVIEW FINANCIAL LOAN | 628000059.... | $511,607 as of 04/01/2015 | 10/2005 | Open. $210,341 past du( 2015. |

| | | | | |
|---|---|---|---|---|
| 4425 PONCE DE LEON BLVD<br>CORAL GABLES FL 33146<br>800 457 5105<br>**Address identification number**<br>0808087621 | **Type**<br>Mortgage<br>**Terms**<br>30 Years<br>**On record until**<br>Apr 2021 | **Credit limit or original amount**<br>$511,607<br>**High balance**<br>$0<br>**Monthly payment**<br>$2,764<br>**Recent payment**<br>$0 | **Date of status**<br>06/2014<br>**First reported**<br>12/2012<br>**Responsibility**<br>Joint | **Reinvestigation informa**<br>This item was updated fro processing of your disput( 2015. |

180 days past due as of May 2014 to Apr 2015, Dec 2012 to Mar 2014

**Balance history**
The following data will appear in the following format:
account balance / date payment received / scheduled payment amount / actual amount paid
Mar 2015: $511,607 / Jul 01, 2009 / $2,764 / no data
Feb 2015: $511,607 / Jul 01, 2009 / $2,764 / no data
Jan 2015: $511,607 / Jul 01, 2009 / $2,764 / no data
Dec 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Nov 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Oct 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Sep 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Aug 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Jul 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Jun 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
May 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Apr 2014: $511,607 / Mar 01, 2014 / $3,000 / no data
Mar 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Feb 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Jan 2014: $511,607 / Jul 01, 2009 / $2,764 / no data
Dec 2013: $511,607 / Jul 01, 2009 / $2,764 / no data
Nov 2013: $511,607 / Jul 01, 2009 / $2,764 / no data
Oct 2013: $511,607 / Jul 01, 2009 / $2,764 / no data
Sep 2013: $511,607 / Jul 01, 2009 / $2,764 / no data
Aug 2013: $511,607 / Jul 01, 2009 / $2,764 / no data
Jul 2013: $511,607 / Jul 01, 2009 / $2,764 / no data
Jun 2013: $511,607 / Jul 01, 2009 / $2,764 / no data

Page 2 of 2

# EXHIBIT 1200

Table of Damages Incurred

## JANET HILL - DAMAGES FROM ATTEMPTED ACTS TO FORECLOSURE ACTIONS

| Items | Estimated Damages |
|---|---|
| Emotional Grief and Harms | $25,000.00 |
| Credit Damage by False Reporting | $100,000.00 |
| Falsely induced Mortgage Payments | $135,000.00 |
| Total: | $260,000.00 |

Notwithstanding the above statutory damage claims which are separate, Ms. Hill provides the above table to illustrate how the attempted foreclosure and credit damages by Defendants are in direct approximation and causes of the harms that she has suffered. The amount of financial injuries are based upon his personal knowledge and beliefs relevant to her sufferings. Plaintiff does not waive her rights to amend or defend her damage claims. Plaintiff presents the damages that are known to date from ongoing, events, accordingly.